MOISE, Justice.
Owing to the importance of this case, it is necessary that a prompt decision be rendered herein, and being of the opinion that the judgment of the lower court is violative of LSA-R.S. 18:555 and is therefore null, void, and without effect, as will be hereafter pointed out in written reasons;
It is Ordered, Adjudged, and Decreed that the writs issued herein be made peremptory; that the judgment of the district court be annulled, reversed, and set aside; that the preliminary injunction issued herein by the lower court be recalled and set aside; and that plaintiff’s suit be dismissed.
HAMITER, J., dissents with written reasons.
HAWTHORNE, J., concurs in the decree.
McCALEB, J., dissents with written reasons to be assigned.
*149 MOISE, Justice.
Writs, accompanied by a stay order, were granted under our supervisory jurisdiction, Article VII, Sec. 2, Louisiana Constitution of 1921, LSA, to review a judgment of the trial court, restraining the Board of Supervisors of Election, for the Parish of Plaquemines, et al., from appointing commissioners, or certifying any person to serve in the General Election, to be held in the Parish, on November 6, 1956, whose name does not appear on a list furnished to the Board of Supervisors of Election, by the Parish Democratic Committee, on September 15, 1956, and ordering the Board to appoint election officials from the list-submitted by the Parish Committee.
The facts leading up to this controversy over the appointment of election officials to serve at the polls in Plaquemines Parish, for the General Election to be held on November 6, 1956, show that the Board of Election Supervisors for that parish, selected the officials partially from a list submitted by the Parish Democratic Commitee, the so-called Independent Democratic Organization, and the Republican Party. The Independent Democratic Organization and the Republican Party are not parties in these proceedings.
Relator argues that the list submitted by the Parish Committee was not a valid list, because it was not approved by the State Central 'Committee in accordance with Act 224 of 1940, Sec. 12, as amended by Act 439 of 1952, LSA-R.S. 18:555.[1]
The respondent -takes the position that the Board of Supervisors of Election could not name any of the election officials exj cept those, contained .on the list submitted by the Parish Committee. It further contends that it has not been the custom to secure the approval of the State Central Committee of lists of officers to serve at the polls compiled by the Parish Committee, conceding that the list of names presented to the Board of Supervisors of Election by the Parish Democratic Committee was not approved by the State Central Committee.
*151 The simple answer to respondent’s ¡position is that the contention of custom cannot prevail over positive law. We are substantiated by the following statement in American Jurisprudence, Volume 50, Paragraph 513, page 524:
“Generally. — All acts not in terms limited in their operation to a particular term of time are in legal contemplation perpetual; that is, they continue in force until duly altered or repealed by competent authority. * * * ”
We find from the record that the chairman of the Parish Committee was a member of the State Central Committee, and had knowledge of the directions of LSA-R.S. 18:555. In fact, he introduced a resolution in January or February of 1956, which was adopted by the State Central Committee, granting a blanket approval of lists to be used in the General Election of April, 1956. The act of 1952 reiterates the law, and the chairman of the Parish Committee gave effect to that law in the early part of 1956 by introducing the aforementioned resolution.
Respondent rely on the decision in the case of Cranmer v. Fidelity & Casualty Co. of New York, La.App., 18 So.2d 220, 222, which we refused to review on writ of certiorari. In that case, the Court of Appeal in construing the phrase “'subject to the approval of the court’ ”, LSA-R.S. 23:1206, held that it was not intended by the Workmen’s Compensation Law that such approval be a condition precedent to adjustment of differences, but what was meant was that the inquisitorial power of the court was not removed. This case is clearly inapposite both from a factual and legal standpoint. In fact, it supports our conclusion here. That case was decided in accordance with statutory construction that a statute must be construed consonant with and in order to give full effect to its ob j ect.
The Court of Appeal in deciding that case followed that rule and gave the subject phrase a meaning that would make effective the object of our Workmen’s Compensation Law, that the injured employee would receive compensation or sustenance during the period of his disability.
In reaching our conclusion, that the Parish Committee must secure the approval of the State Central Committee of lists of officers to serve at the polls, we have followed the same rule, as set forth in the Cranmer case, supra, basing our decision, so as to give an effect to the subject phrase consonant with the object of Act 224 of 1940, LSA-R.S. 18:555, expressed in the title thereof; that is,
“To preserve the purity of the ballot, * * * ”
It is apt to observe that the conclusion we have reached here carries out the intention of LSA-R.S. 18:555 as therein expressed, that:
*153 “Insofar as is practicable, the commissioners shall be so apportioned as to represent equally all the political parties authorised to make nominations.
The issue here is Sui Generis. In such ■cases we cannot, as judges, be mere technical legal experts, with our noses in leather bound books of decided cases. We can find no such case; therefore, this suit demands more specifically the absence of the idolatry of precedent worship, a less devotion to legal abstractions of matters supposed, a greater notice of a fair apportionment of •commissioners and clerks of election, so as to insure the object of the enactment expressed in its title constitutionally imposed; and, we must be imbued with the spirit of what is right, is right.
HAMITER and McCALEB, JJ., dissent with written reasons.
HAWTHORNE, J., concurs in the decree, with written reasons.

. “In every parish the board of supervisors shall, thirty days prior to any election, appoint three commissioners and one clerk to preside over the election at each polling precinct. They shall be qualified voters of the ward of which the polling precinct forms a part and shall be appointed from lists to contain not less than six names furnished by each political party. These lists shall be furnished to the board at least thirty-five days before the day of election. Any list offered after that date shall not be received, nor shall any such list be received or acted upon or recognized by the board of supervisors of election which shall contain the name of any person not registered as affiliated with the party handing in the list. Insofar as is practicable, the commissioners shall be so apportioned as to represent equally all the political parties authorized to-make nominations. The parish committee, subject to the approval of the state central committee of each political party, shall select the names which are to be sent to the board as provided herein.”