YARRUT, Judge.
This is a suit to enjoin the Board of Supervisors , of Elections for the Parish of Orleans from accepting and acting upon a list of commissioners and clerks submitted to .it. by., the Orleans Parish Democratic Executive Committee, for the General Election to be held in the City of New Orleans on May 27, 1961, to elect members of the Commission .Council of the City. From a judgment^ denying Plaintiffs the relief prayed for, they have taken this suspensive appeal.
Plaintiffs are, respectively, an individual member of the Orleans Parish Democratic Executive Committee and an individual member of the Democratic State Central Committee, both appearing in their capacity of individual members of these respective Committees, and also as citizens, electors and taxpayers.
Defendants are the President, and individual members of the Board of Supervisors of Elections for the Parish of Orleans; the Orleans Parish Democratic Executive Committee, and its Chairman; and the Orleans Parish Republic Executive Committee, and its Chairman.
At the opening of the trial in the District Court, all parties agreed to the dismissal of the Chairman and members of the Orleans Parish Republican Executive Committee, as parties defendant.
Defendant, Orleans Parish Democratic Executive Committee, reconvened and asked that the Board of Supervisors of Elections for the Parish of Orleans be enjoined and prohibited from receiving and acting upon, or recognizing, any list of proposed commissioners or clerks presented to said Board, except the lists presented by it.
The District Court dismissed Plaintiffs’ suit, and rendered judgment in favor of the Orleans Parish Democratic Executive Committee, in reconvention, and against the Board of Supervisors of Elections for the Parish of Orleans, prohibiting said Board from accepting any lists other than the lists submitted by the Orleans Parish Democratic Executive Committee; and further enjoined said Board of Supervisors of Elections for the Parish of Orleans from appointing any person as commissioner or clerk who is not a qualified, registered Democrat or Republican elector in the ward in which it is intended that such person serve.
Plaintiffs-Appellants contend that the entire judgment of the Court should be reversed and the Defendants-Appellees concede that reference to the Republican lists, included in the judgment, should be deleted therefrom, since the Orleans Parish Republican Executive Committee, by consent of all parties, was dismissed from the suit and, therefore, no judgment can be rendered that would affect the Republican Committee.
For brevity, the Orleans Parish Democratic Executive Committee will be referred to hereinafter as the “Parish Committee”; the Democratic State Central Committee will be referred to as the “State Committee” ; and the Board of Supervisors of Elections for the Parish of Orleans will *143 be referred to as the “Board”. The bases of the complaint of Plaintiffs-Appellants are:
1. That the lists submitted by the Parish Committee were not properly approved by the State Committee, because all members of the State Committee did not meet and personally approve or disapprove such lists; that the lists submitted by the Parish Committee to the State Committee contain the names of some who are not qualified voters, hence all lists should be rejected;
2. That the lists submitted do not give a fair and equal apportionment of commissioners to the respective factions of the Democratic Party, to-wit, the Regular Democratic Organization and the Crescent City Democratic Association.
Before considering the respective complaints of Plaintiffs-Appellants, we must first consider LSA-R.S. 18:555, concerning the appointment of commissioners and clerks for General Elections, as amended by Act 439 of 1952, as follows:
“In every parish the board of supervisors shall, thirty days prior to any election, appoint three commissioners and one clerk to preside over the election at each polling precinct. They shall be qualified voters of the ward of which the polling precinct forms a part and shall be appointed from lists to contain not less than six names furnished by each political party. These lists shall be furnished to the board at least thirty-five days before the day of election. Any list offered after that date shall not be received, nor shall any such list be received or acted upon or recognized ‘by the board of supervisors of election which shall contain the name of any person not registered as affiliated with the party handing in the list. Insofar as is practicable, the commissioners shall be so apportioned as to represent equally all the political parties authorized to make nominations. The parish committee, subject to the approval of the state central committee of each political party, shall select the names which are to be sent to the board as provided herein.”
With reference to the objection that all members of the State Committee did not vote and approve names contained on said lists, and that the lists were approved only by the Chairman prematurely, even if he had a right' to approve or disapprove them, the record discloses these facts: The Chairman of the Parish Committee prepared the ward and precinct lists of commissioners and clerks as provided by the above-quoted statute, and called on the Chairman of the State Committee, Mr. Riddle, at his home in Marksville, La., and had him approve the lists. Mr. Riddle’s approval was on the separate ward listings of the proposed commissioners, etc., for each of the 17 wards of the City of New Orleans. A week later,, the Parish Committee formally met and the question of commissioners and clerks was discussed. The lists prepared by the Chairman, as approved by Mr. Riddle, were approved, without any change or alteration whatsoever.
It is significant that, at this meeting of the Parish Committee Plaintiff (Bacon) a member of the Committee, made no protest after his lists containing only names of Regular Democratic Organization commissioners were rejected, 28 to 4, and the lists prepared by its Chairman and as approved by Mr. Riddle, were adopted without dissent.
The contention that the State Committee had not given its approval because the Committee of over 100 members did not assemble and vote, is untenable. The Primary Election Law, LSA-R.S. 18:288 and 18 :- 294, contain the following provisions:
LSA-R.S. 18:288
“The state central committee of each political party may create any committee it finds necessary to carry out and to accomplish the purposes of this Part if such committee is not herein otherwise provided for.”
*144 LSA-R.S. 18:294
“The state central committee may adopt for its government and for the government of any committee in this Part authorized to be created, any rules and regulations not inconsistent with the constitution and laws of the state or of the United States. It may provide the conditions under which its members may vote by proxy, and provide for the payment of the expenses of its officers and employees.”
It seems clear from the above quotations that the law authorizes the State Committee to act through representatives or subcommittees, without any restriction on the composition of such sub-committees. Mr. Riddle (summoned by Plaintiffs-Appellants) testified that, by resolution of the State Committee, he was authorized to approve or disapprove lists of election commissioners submitted under LSA-R.S. 18 :- SSS. Plaintiffs-Appellants contend that since Mr. Riddle did not produce the resolution of authority he failed to prove his authority to act. Plaintiffs-Appellants did not request the production of such resolution, either before or during the trial.
We do not think Plaintiffs-Appellants seriously contend the State Committee did not authorize the Chairman to act in such matters, but stressed, in brief and in argument, that the Committee had no authority to delegate such power to the Chairman. As the State Committee is composed of more than 100 members from all parishes of the State, and must approve election lists for all elections throughout the State, whether regular, general or special, parish or municipal, it is understandable why the Committee is authorized'.by the statutes to act through authorized representatives or sub-committees.
The case of Plaquemines Parish Democratic Executive Committee v. Board of Supervisors of Election for the Parish of Plaquemines, 231 La. 146, 90 So.2d 868, cited by Plaintiffs-Appellants is not apposite here. In that case, unlike here, there was neither approval of the Committee as a whole nor the approval of the Chairman, or any other authorized member thereof.
With reference to the prematurity of the approval, Mr. Riddle admitted that he approved the lists before the Parish Committee acted, and would approve them again if necessary. There is no pretense that the lists Mr. Riddle approved were changed or altered in any manner when adopted by the Parish Committee a week later. It is also significant that the State Committee was not made a party defendant, nor did it intervene, nor is there any evidence that complaint was made to it by Plaintiffs for the invalidation of Mr. Riddle’s approval. Therefore, this objection is untenable.
The objection that some of the lists contained unqualified voters and all lists should be rejected by the Board under LSA-R.S. 18:555, is equally untenable. The “list”, to be rejected, does not refer to one master list but to any one or more of the individual lists of commissioners for the respective 334 precincts in the City of New Orleans. The Board has construed the mandate of rejection to apply to each objectionable precinct list only, and not to the entire ward or one city list. The general rule of contemporaneous construction of statutes is, where a statute is subject to two interpretations, the interpretation placed thereon by those charged with its administration will be accepted by the court, if reasonable and equitable. Roberts v. City of Baton Rouge, 236 La. 521, 108 So. 2d 111; James v. Rapides Parish Police Jury, La.App., 113 So.2d 88.
It would be unreasonable and inequitable to hold, as contended by Plaintiffs-Appellants, that 334 precinct lists, containing over 2,000 names, such as obtains here, should be completely disregarded when, perchance, one name appearing on a few is a disqualified person.
Accordingly, we must hold that the Board properly construed the law; and that only those precinct lists containing one or more illegal names should be disregarded.
*145 The complaint that the various lists did not contain any members of the Regular Democratic Organization is without merit, because the statute clearly refers to fairness and equal representation of political parties, not political factions, as was aptly expressed by the District Judge in his Reasons for Judgment, as follows:
“The Parish Committee consists of persons elected by the Democratic electors of Orleans Parish, and they are charged generally with conducting the affairs of the Party in this Parish. This includes the interests of all Democratic nominees who are opposed by candidates supported by other political parties at General Elections. No evidence was adduced at the trial proving the allegation made that any individual candidate, and particularly James A. Comiskey, was going to be unrepresented by Democratic commissioners at the polls in the May 27th, 1961, General Election. R.S. 18:555 does not require equal representation at the polls in General Elections between rival factions of the Democratic Party. It does require an equitable distribution of representation at the polls among the political parties, and there is no doubt that by political parties the Legislature meant the Democratic Party, Republican Party or any other opposition political group. The statute does not attempt to set up rules of warfare between factions inside the Democratic Party. Plowever desirable it might be to split commissioners among all the opposing factions in the Democratic Party, the law simply provides no way that this may be done. It presumes that all factions of the Democratic Party will unite in a General Election and protect the interests of the Democratic candidates in any contest with opposition party nominees. The legislature has decided that the Democratic Parish Committee and the Republican Parish Committee of each Parish shall submit a list of registered Democrats and Republicans to the Board, subject to the approval of the Democratic and Republican State Committees. If they do so in accordance with R.S. 18:555 it is immaterial from what source the names of the individuals came.”
Any reference to the lists furnished by the Republican Party must be omitted from the judgment herein, in view of the fact that the Republican Executive Committee was, by consent of all parties, dismissed from the suit. Any judgment rendered herein could not be binding on the Republican Committee nor the Board.
For the reasons assigned, the judgment of the District Court is amended so as to delete therefrom any decree regarding the list of commissioners submitted by the Orleans Parish Republican Executive Committee, and in all other respects the judgment of the District Court is affirmed.
Amended and affirmed.
JANVIER, J., took no part.