Dear Representative Brun:
This office is in receipt of your opinion request directed to Attorney General Richard P. Ieyoub, which has been assigned to me for review. You have asked the Attorney General to review and comment upon the legality of certain ordinances recently passed by the Caddo Parish Commission, in light of the prohibition against the donation of public funds contained in LSA-Const. Art. VII § 14.
You advise that on February 10, 1993, the Caddo Parish Commission enacted three ordinances granting the use of public funds for the following three purposes:
 (1) $10,000.00 to the Highland Area Partnership. This group is involved with the preservation and restoration of the Highland neighborhood of the City of Shreveport. The Commission's contribution would reportedly go toward the salary of a full-time director for the HAP program.
 (2) $12,276.00 to provide Hepatitis B vaccinations to volunteers of the rural fire districts.
 (3) $5,000.00 to "Drop Your Guns", a newly-formed organization that has as its stated purpose the reduction of handgun-related violence in the Shreveport-Bossier area. The program's two principal founders are members of the Caddo Parish Commission, serving as the organization's president and vice-president.
A resolution of these issues requires review of LSA-Const. Art. VII § 14 (A), (B), and (C), pertinent provisions which we quote herein.
 (A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private. . . .
 (B) Authorized Uses. Nothing in this Section shall prevent (1) the use of public funds for programs of social welfare for the aid and support of the needy; (2) contributions of public funds to pension and insurance programs for the benefit of public employees; (3) the pledge of public funds, credit, property, or things of value for public purposes with respect to the issuance of bonds or other evidences of indebtedness to meet public obligations as provided by law. . . .
 (C) Cooperative Endeavors. For a public purpose, the state and its political subdivisions or political corporations may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation, or individual.
The Supreme Court has interpreted Art. VII § 14 to be violated whenever the State or a political subdivision seeks to give up something of value when it is under no obligation to do so. City of Port Allen v. Louisiana Risk Management, Inc.,439 So.2d 399 (La. 1983); Guste v. Nicholls College Foundation,564 So.2d 682 (La. 1990). The worthiness of the contemplated use of public funds is immaterial to the constitutionality of a transfer of public funds. See James v. Rapides Parish Police Jury, 113 So.2d 88 (La.App. 2nd Cir. 1959); see also attached Attorney General Opinion Number 92-543, which addresses the constitutionality of grants of public funds to a variety of charitable organizations.
Exceptions to the prohibition against the loan, pledge, or donation of public funds are contained in Paragraph (B). None of the exceptions are applicable to the issues presented. Paragraph (C) of Section 14 authorizes the state and its political subdivisions to engage in cooperative endeavors for a public purpose with other governmental agencies, public or private corporations, or individuals. A constitutionally sanctioned cooperative endeavor must meet a three part test: (a) the public agency has a legal obligation to expend public funds, (b) the expenditure must be for a public purpose and (c) the expenditure must create a public benefit proportionate to its cost. See Attorney General Opinion Number 92-722.
I. Highland Area Partnership
The governing authority of Caddo Parish is prohibited from providing loans or grants to private citizens or concerns "Except as otherwise provided by the constitution . . .", or if the transfer of public funds meets the criteria of either Art. VII § 14(B) or (C), quoted herein. Although Section 14(B) would allow the proceeds to be utilized for the aid and support of the needy, it does not authorize grants to persons of all income levels. See Attorney General Opinion Number 92-402. Further, this proposed grant does not fall within any of the other exceptions contained in Section 14(B).
It continues to be the opinion of this office that a local governing authority, such as the Caddo Parish Commission, can only use public funds to renovate privately owned buildings, if the renovation work is done on behalf of the needy, as part of a parish program "of social welfare for the aid and support of the needy", which is constitutionally allowed. We conclude that the Caddo Parish Commission cannot provide grants for the renovation of buildings owned by private interests, unless the project is done on behalf of the truly needy. We enclose copies of recently released Attorney General Opinion Numbers 92-780, and 92-402, which specifically address this issue.
II. Volunteer Firemen — Vaccinations
We are advised that Federal Occupational Safety and Health Administration guidelines now require that medical emergency response personnel be inoculated as a precaution against the contraction of Hepatitis B in the course of work. Fire protection districts within Caddo Parish frequently utilize the services of volunteers, who are now required to be inoculated.
Fire protection districts are created and modified by the parish governing authorities. LSA-R.S. 40:1492. The governing authority exercises general power over such a district created by it. LSA-Const. Art. VI § 15.
The Caddo Parish Home Rule Charter government enjoys all inherent power necessary, requisite or proper for the fulfillment of the obligations and public purposes mandated by the home rule charter, as long as such purposes and powers are not prohibited by general state law or the constitution. The charter recognizes the power of the governing authority to exercise its inherent police power to assist fire protection. LSA-Const. Art. VI § 5; see also Section 2.04 of the Home Rule Charter, defining general powers.
LSA-R.S. 40:1500(D) authorizes the fire protection districts to enter into contracts and agreements "with any state or federal agency or instrumentality as are necessary to procure aid and grants to assist them in carrying out the purposes for which they were created." This office has recognized that, not only does state law contain no prohibition against the supplemental funding of fire protection districts, it expressly contemplates it. See Attorney General Opinion Number 90-513.
We fund no prohibition contained in your charter prohibiting the parish financial support of the volunteer fire departments. Rather, the public policy of this state is that government should protect the health, safety and property of its citizens from the danger of fire. We are of the opinion that funding by Caddo Parish for Hepatitis B vaccinations of volunteer firemen, now mandated by federal law, is not an impermissible donation of public funds, but is a transfer of public funds in furtherance of a constitutional duty, also authorized by charter and state law. We enclose copies of Attorney General Opinion Numbers 90-271 and 92-469 which address related issues.
III. Drop Your Guns
We are of the opinion that the Caddo Parish Commission may enter into a cooperative endeavor agreement with the "Drop Your Guns" organization pursuant to LSA-Const. Art. VII § 14(C). A cooperative endeavor agreement applies to a contractual relationship between the political subdivision or public entity and a private entity or corporation. The objective of the agreement usually involves using funds of the political subdivision together with the funds of a private organization in a combined effort to produce a common goal.
We are of the opinion that this program is for a legally sanctioned public purpose. Certainly the Caddo Parish Commission has an underlying obligation to provide for the safety of its citizenry, and such a program furthers the accomplishment of this duty by better informing the public of those issues surrounding gun awareness and control. Finally, we are of the opinion that this expenditure creates a benefit to the parish citizenry which is proportionate to its cost.
However, we would like to point out an infirmity with this particular ordinance. We are advised that the program's two principal founders are members of the Caddo Parish Commission. They serve as the organization's president and vice-president.
First, the Home Rule Charter for the Caddo Parish Commission prohibits this arrangement. Section 6-09 of the Charter provides:
 "It is the declared public policy of Caddo Parish that public funds be expended for the priority needs of the parish without limitations based on commission district lines or other arbitrary geographical criteria. No ordinance or resolution shall delegate control of the expenditure of appropriated monies to any commissioner or combination of commission members. Any ordinance or resolution adopted in contravention of the provisions of this paragraph shall be null and void." (Emphasis added).
The officers of this organization would necessarily exercise a certain amount of control over the expenditure of these monies. Because the president and vice-president are both commission members, this section is applicable, and prohibitive of the arrangement.
Second, we forward to you an opinion rendered by the Board of Ethics for Elected Officials, which is applicable to a legislator's participation in legislation appropriating monies to nonprofit or other private entities for which the legislator serves in some capacity. The reasoning of the opinion may be applicable to elected officials of a local governing body. This office defers to the opinion of the State Ethics Commission regarding ethical violations of elected public officials, and we refer you directly to the Commission for an opinion concerning this matter.
We hope the foregoing is helpful to you. Should you have further inquiries, please contact this office.
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 BY: KERRY L. KILPATRICK Assistant Attorney General
RPI/KLK/0214E