HARDY, Judge.
This is an action by the plaintiff, Trenton L. James, as a citizen and taxpayer *90 of Rapides Parish, seeking an injunction prohibiting the Police Jury of said Parish from making a contribution, donation or payment to the Red River Valley Improvement Association, Inc. To the suit a number of other citizens and taxpayers joined the, plaintiff by way of intervention, and the Red River Valley Improvement Association, Inc., intervened as an interested party on behalf of the defendant. A temporary restraining order was issued, following which the case was tried on the rule for a preliminary injunction and judgment was rendered making the rule absolute and ordering the issuance of a preliminary injunction upon plaintiff furnishing bond as fixed by the court.
Following the above proceedings the trial judge, Honorable Walter M. Hunter of the Ninth Judicial District, issued an order recusing himself from further participation in the proceedings and appointed the Honorable Francis J. Gremillion, Judge of the Twelfth Judicial District, to hear, try and determine the suit.
Pursuant to a stipulation entered into by and between counsel for all parties, the matter was submitted for determination and judgment upon the record as constituted by trial of the rule for preliminary injunction.
For reasons assigned in a written opinion, the Judge a quo rendered judgment in favor of the plaintiff and the named in-tervenors and against the defendant, Rap-ides Parish Police Jury and the intervenor, Red River Valley Association, Inc., permanently enjoining the said Police Jury from making a contribution or donation in any amount to the Red River Valley Association, from which judgment the defendant police jury appealed to the Honorable The Supreme Court of the State of Louisiana, which ordered the appeal transferred to this court. James v. Rapides Police Jury, 236 La. 493, 108 So.2d 100.
Plaintiff bases his action upon the contention that the proposed payment of dues, representing membership in the Red River* Valley Improvement Association, violates the specific prohibitions of Sections 8 and 12 of Article IV of the Constitution of the State of Louisiana, LSA, prohibiting the use of public funds for the benefit of public or private associations or corporations. Defendant urges that, under the enumeration of the statutory powers of police juries of the State, such bodies are specifically authorized and empowered to engage in the construction of levees, dikes, drainage canals and like works (LSA-R.S. 33:1236, subs. 2, 3 and 12), and that in the performance of these duties a police jury has the right to engage the services of experts or to appropriate and pay funds to any private non-profit organization which is performing such services. Finally, it is urged on behalf of defendant that, under the doctrine of contemporaneous construction, courts should not upset a long established interpretation placed upon a statute by administrative-officials.
There is no dispute as to the facts involved. In regular session, on September 10, 19S7, the Rapides Parish Police Jury adopted a resolution authorizing the payment of “membership dues in the amount of $750.00 to the Red River Valley Improvement Association * * On the following day the petitioner, Trenton. L. James, who is a citizen, resident and taxpayer of Rapides Parish, instituted this-action to enjoin the payment by the Rap-ides Parish Police Jury of the sum of $750 as authorized in the above noted, resolution.
The Red River Valley Improvement Association is a non-profit corporation duly organized under the laws of the State, and the objects and purposes of said corporation are fully set forth in Article II of its Articles of Incorporation as follows:
“The objects and purposes for which this corporation is organized is: To promote, encourage and assist in the development of the Red River Valley and those of its tributary streams and *91 the territory adjacent thereto by promoting the building of such levees, reservoirs, dams, cut-offs, retards, channel corrections and other similar works, as will protect the land adjacent to the river and its tributary streams from overflow, and will permanently establish the regimen of the river and its tributaries and avoid the •caving and underscouring of the banks •of said river and its tributary streams; to encourage and promote interest in •drainage, irrigation and soil erosion •and the expenditure of such sums as •are necessary to properly drain, irrigate and protect the lands of the Valley; to encourage and promote the restoration of navigation upon the said river and its tributary streams; to ■iencourage the building of such hydro■electric plants as are necessary and economically justified for the utilization of water power which may be •developed upon the Red River and its tributary streams, especially those lo■cated in the states of Oklahoma, Tex.as and Arkansas; to encourage, promote and aid in the reforestation of the land constituting a part of the Red River Valley and its tributary streams, .and to encourage, promote and aid in the establishment of wild game and wild life refuges upon the reservoirs, lakes and streams located within the Red River Valley; to promote, entourage and aid in construction of recreational centers; and generally to promote, aid and encourage the development of the Red River Valley and the valley and territories of adjacent ■streams for its general economic improvement, whether said improvements be of the nature specifically named above or not.” (Emphasis supplied.)
There can be no question as to the established fact that the work of this incorporated body has resulted in incalculable benefits to the State generally, and particularly to those subdivisions located in the general area designated as the Red River Valley. The testimony of a number of public officials, as well as certain officers and employees of the Association, which was introduced on behalf of defendants on trial of the case, incontrovertibly establishes the vast benefit that is received by the public generally and, among others, particularly by the residents of Rapides Parish, from the work of the Association. Nonetheless, it must be observed that the Association itself does not actually perform any direct services in connection with the improvement and protection of the Red River Valley area but its activities are primarily directed toward (1) promoting and sustaining public interest in its work, and (2) serving in a public relations capacity in representing the interests and needs of the Red River Valley area before the Congress of the United States, the Corps of Engineers of the United States Army and other bodies. In this latter pursuit the Association has been instrumental in procuring needed appropriations from the Congress and in initiating and prosecuting improvement and control measures of immediate and constructive value.
Under these indisputable factual circumstances, there is not the slightest basis for questioning the value of the services rendered by the Association to the people of Rapides Parish, among others.
Proceeding to a consideration of the opposed contentions of the parties litigant, we note the prohibitory provisions of the Constitution upon which plaintiff relies, as follows:
“Article IV.
“§ 8.
“ * * * No appropriation from the State treasury shall be made for private, charitable or benevolent purposes to any person or community; * * ■*
# i{i ^ # * *
“§ 12.
“Loan or pledge of public credit; stock purchases; assumption of lia *92 bilities; rights of way. (As amended Acts 1948, No. 535). The funds, credit, property or things of value of the State, or of any political corporation thereof, shall not be loaned, pledged, or granted to or for any person or persons, associations or corporations, public or private; nor shall the State, nor any political corporation, purchase or subscribe to the capital stock or stock of any corporation or association whatever, or for any private enterprise. Nor shall the State, nor any political corporation thereof, assume the liabilities of any political, municipal, parochial, private or other corporation or association whatsoever, except as otherwise provided in this Constitution; nor shall the State undertake to carry on the business of any such corporation or association, or become a part owner therein; * *
We do not observe that Section 8 of Article IV of the Constitution has any application to the case at hand inasmuch as the facts before us do not involve any appropriation from the State treasury. This particular section, therefore, could only be considered, if at all, in connection with the instant case as a statement of general public policy.
However, not so with Section 12 of Article IV which in specific and unambiguous words prohibits the use of funds belonging to any political corporation of the State, for any association or corporation whether public or private. While we think this provision to be so clear and explicit as serves to conclusively dispose the issue before us, we feel impelled, because of the zeal of counsel and the interested parties, the general consideration of the public welfare, and the laudable efforts of the corporation involved in its service of the public interest, to give the matter a considerably more detailed consideration than we think is absolutely necessary.
The identical constitutional question before us was exhaustively considered and. determined by the Supreme Court in State ex rel. Orr v. City of New Orleans, 50 La.Ann. 880, 24 So. 666, 671. The suit was instituted by a citizen and taxpayer of the City of New Orleans, who sought to-enjoin the payment of the total sum of $40,200 appropriated from the public treasury of the city to various and sundry-private charitable and benevolent institutions. The constitutional provisions which were involved were Articles 51 and 56 of the Constitution of 1879. The provisions, of the said articles, except for the wording thereof, must be considered as so-similar as to be identical, for all practical purposes, with the articles of the Constitution of 1921 which we have above set forth. The judgment of the court granted the injunction. The opinion carefully emphasized the worthiness of the corporations which were intended beneficiaries of the appropriation, but predicated its conclusions, in some degree, upon the manner in which the appropriation had been made and the payment contemplated. In other words, the opinion indicated that the conclusion of the court might have been otherwise if the amount of the appropriations and proposed payments to the different institutions had been based upon “any fixed, established relation between such amounts and services which could be legally charged for by each, as based upon a precise legal equivalent consideration-received.”
The opinion in the cited case so emphatically and beautifully pointed up its conclusions that we desire to grace this-opinion by the following quotation:
“In County of Cook v. Chicago Industrial School for Girls, 125 Ill. 540, 18 N.E. 183, [1 L.R.A. 437] the supreme court of Illinois, referring to-the necessity it was under of pronouncing a judgment which was in-evident opposition to its sympathies and wishes, — setting aside an appro *93 priation made in aid of parties engaged in most praiseworthy work, but under circumstances prohibited by the constitution,' — said: ‘They are engaged in the best and holiest of all works, —that of reforming and caring for the unfortunate. We agree with counsel for appellee that they do their work faithfully and well. It is so shown by the proof. It is not for us to discuss the wisdom or unwisdom of this prohibition. There it is, couched in terms so emphatic that it cannot fail to challenge attention. Any scheme, even though hallowed by the blessing of the church, that surges against the will of the people as crys-talized into their organic law, must break in pieces as breaks the foam of the sea against the rock on the shore.’ Our duty, under similar circumstances, is no less imperative than that imposed upon the supreme court of our sister state.”
There can be no question as to the validity of defendant’s position that it is specifically authorized by statute to engage in necessary work in connection with the building of levees, dikes, drainage canals, etc., LSA-R.S. 33:1236, subds. 2, 3 and 13.
Nor can there be any question as to the corollary proposition to the effect that in the performance of its above designated statutory duties a police jury may hire expert services or even contract with private organizations for the performance of services.
If the record in the instant case sustained either of these methods of employment of services, certainly, our conclusions would be seriously affected, but there is nothing in the record which could possibly be construed as evidencing the fact that the money sought to be appropriated and paid by the defendant police jury could be considered as payment for the services either of individuals or by contract with the Red River Valley Improvement Association.
It may appear to be, and probably is, a species of legal quibbling for a court to reach a conclusion that prohibits a certain action because of the manner in and method by which it was sought to be accomplished. Nonetheless, such must be the strange and undesirable effect of the necessary enforcement of the clear provisions of constitutional prohibitions. Though it may be regarded as an unnecessary comment, we think it is appropriate in the instant case to observe that these specific prohibitions have been wisely implanted in our fundamental law, for it is conceivable that without such prohibitions the State, or a political subdivision thereof, might so deplete the public fisc by contributions to almost innumerable worthy private and semi-public enterprises as to seriously impair the necessary expense of conducting more prosaic but more important governmental functions.
Finally, we do not think the doctrine of contemporaneous construction, as urged by defendant, can be properly applied in the instant case. The basis for this contention lies in the established fact that the defendant police jury, for a period of some ten years, more or less, has made similar payments or contributions to the Red River Valley Improvement Association, and, accordingly, counsel for defendant argues that this “long-standing interpretation placed upon a statute by administrative officials should not be overruled” without positive and definite proof that their interpretation is wrong, citing Conley v. City of Shreveport, 216 La. 78, 43 So.2d 223. Reference to the opinion of the cited case indicates to us that the comment upon the doctrine was entirely gratuitous and had no real bearing upon the conclusion reached by the court, which was clearly based upon a finding that the statute, which was there called in question, had no application.
*94 In any event, the rule of contemporaneous construction is applicable only in those instances where the law under examination is ambiguous; State v. U-Drive-It Car Company, 79 So.2d 590 (writs denied), and authorities cited therein.
Inasmuch as we perceive not the slightest ambiguity in connection with the constitutional provisions which are here under consideration, it follows that this contention must be rejected.
For the reasons assigned the judgment appealed from is affirmed.