Dear Mr. Decker:
You have requested an opinion from the Attorney General relative to the legal authority for the City of Mandeville (City) to donate its public funds to the St. Tammany Parish School Board (Board). You specifically ask the following:
 1. Does Article VII, Section 14 of the Louisiana Constitution of 1974 permit the donation of public funds of a municipality for use by public school sponsored organizations — in this case, the Mandeville High School Debate Team?
 2. Does Article VII, Section 14 permit the donation of public funds of a municipality to a public school to be used by the school in any manner it deems appropriate to enhance the education of its students?
The above questions have been presented in light of the following circumstances. Last year, the debate club sought a contribution of $500.00 from the City to assist in defraying the costs associated with the participation of two of its members in a national student debate competition being held in another state. This request was presented to the City Council and your verbal opinion regarding same was solicited. You advised the Council that since the high school debate team was a private organization whose participation in the competition would not further any valid purpose of municipal government, it was your opinion that the donation would violate Article VII, Section 14.
Subsequently, your opinion was requested as to whether the City could make a contribution of $500.00, not to the debate team, but to Mandeville High School to be used by the school, in its discretion, for the general education of its students. You opined that, because the education of children was a matter that the state has intrusted to the various school boards and not to municipal governments, a contribution of this sort would, likewise, be in violation of the state's constitution.
Despite your verbal opinion, a majority of the members of the City Council disagreed and a donation of $500.00 to the Mandeville High School was authorized without restriction as to how the school would use these funds.
The City retained the services of a certified public accountant to prepare its annual audit for fiscal year ending 1994. The auditor, in his management letter to the City, noted that, while the donation in question was not material to the financial statements of the City, it nevertheless constituted a violation of Article VII, Section 14. This finding was subsequently noted by the Louisiana Legislative Auditor who, in turn, requested, through the Legislative Audit Advisory Council, that the City report what remedial action had been taken as a result of the auditor's comment. By letter dated January 18, 1995, the City's Mayor responded that the transaction might constitute a cooperative endeavor between the City and the Board. The Mayor further noted that an opinion from this office on the issue had been requested. The Mayor also requested an opinion of the Legislative Auditor's Office.
It is our opinion that the above expenditure and/or donation must be examined in light of Article VII, Section 14. It provides, in pertinent part, the following:
 "§ Section 14. (A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private. . . .
 (C) Cooperative Endeavors. For a public purpose, the state and its political subdivisions or political corporations may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation, or individual."
A very comprehensive analysis of the above Section, as it relates to the expenditure of public funds was undertaken by this office in Attorney General Opinion No. 90-651. As noted therein, the constitutional norm for the lawful use of public funds and property is found in Section 14. As quoted above, Paragraph (A) generally prohibits the loan, pledge, or donation of public funds. Exceptions to this prohibition are found in Paragraph (B), none of which appear to be relevant to the issue at hand.
Paragraph (C) of Section 14 authorizes the state and its political subdivisions (i.e., the City) to engage in cooperative endeavors for a public purpose with other governmental agencies, public or private associations and corporations and/or individuals. However, Paragraph (C) merely supplements the prohibition against donations contained in Paragraph (A). It does not create an exemption or exception from the general constitutional norm. In other words, the cooperative endeavor must meet the general standards for the non-gratuitous alienation of public funds established in Paragraph (A). City of PortAllen v. Louisiana Risk Management, et al, 439 So.2d 399
(La. 1983) and Attorney General Opinion No. 90-651.
In City of Port Allen, the Supreme Court ruled:
 "The cases that do exist [under La. Const. Art. IV § 12
(1921)] hold primarily that this section is violated whenever the state or political subdivisions seek to give up something of value when [they are] under no legal obligation to do so . . . .
* * *
 Section 14(C) does not help the state, either. There is no indication that it is meant to be an exception to the rule of § 14(A); the exceptions are clearly contained in § 14(B). Thus, even if political subdivisions cooperate for a public purpose, they still may not give away their assets to other political subdivisions, the United States Government, or public or private associations or corporations, or to individuals merely for a `public purpose'." (Emphasis added.)
The threshold requirement of the constitutional doctrine for distinguishing between invalid and lawful expenditures and transfers of public funds and property is the presence of a legal obligation or duty by the transferor to alienate said funds or property. See also Beard-Poulan, Inc. v. Dept. ofHighways, 362 F. Supp. 547 (W.D. La. 1973) andTown of Brusly v. West Baton Rouge Parish PoliceJury, 283 So.2d 288 (La.App. 1st Cir. 1973).
This prerequisite is satisfied by the presence of avalid statute, ordinance, charter or contract. The vehicle by which the obligation is created may, nevertheless, be ultra vires or unconstitutional if it creates no binding legal obligation or if the obligation created is substantially inconsistent with, or beyond the scope of the City's authorized duties. Attorney General Opinion No. 90-651.
As noted above, the requirement of a legal duty is the threshold, but not the only predicate for the constitutionality of the expenditure. Second, the expenditure must also be for a public purpose. Third, the expenditure must create a public benefit proportionate to the cost (i.e., the amount expended). Attorney General Opinion Nos. 93-787, 92-722, 92-127 and 90-651.
The legal obligation/duty standard discussed above was applied by the Second Circuit Court of Appeal in James v. RapidesPolice Jury, 113 So.2d 88 (La.App. 2nd Cir. 1959). The Court adjudged the constitutionality of the police jury's payment to the Red River Valley Improvement Association, Inc. (Association), a nonprofit corporation chartered for the purpose of promoting and encouraging public interest in the development of the Red River Valley. The Court determined that the police jury had a legal obligation (i.e., statutory duty) to build levees, dikes, drainage canals, etc., and that duty encompassed the hiring of expert services and even the hiring of private organizations to perform the work the jury, itself, was obligated and empowered to undertake. However, the Court determined that the services rendered by the Association constituted public relations services which did not, in fact, build levees. Thus, the expenditure of public funds for that purpose was not within the scope of the statutory duty of the police jury.James makes two other points of importance to this constitutional doctrine. The first is that the worthiness of the recipient and of the actual use of public funds is immaterial to the issue of the constitutionality of the transfer by the public entity. As the Court notes:
 "Though it may be regarded as an unnecessary comment, we think it is appropriate in the instant case to observe that these specific prohibitions have been wisely implanted in our fundamental law, for it is conceivable that without such prohibitions the State, or a political subdivision thereof, might so deplete the public fisc by contributions to almost innumerable worthy private and semi-public enterprises as to seriously impair the necessary expense of conducting more prosaic but more important governmental functions."
In other words, to allow unrestricted expenditures of public funds by any and all political subdivisions, public agencies, entities or officers, as long as those entities or persons can imagine some species of "public good" or "public benefit" resulting therefrom, would be to authorize a fragmentation and incoherence in fiscal policy at all levels of state government. This, Article VII, § 14 seeks to prevent by requiring avalid legal authority (even at the contractual level) for all alienation of public funds. The effect of Article VII, § 14, as interpreted by the Supreme Court and the Attorney General, is to give further constitutional protection and definition to the plenary power of the legislature over the public fisc, and to insure that political subdivisions conform to statewide general fiscal policy rather than formulate it on the basis of local expediency within their own territorial jurisdictions.
The second important statement of James is that custom, as expressed in the doctrine of contemporaneous construction, can not modify or negate the operation of the prohibition of Article VII, Section 14. In James, the police jury had been making these same payments to the Association for approximately ten years. Regardless of how long or how often any governmental entity has transferred funds to others, public or private, the duration and repetition of that practice does not create an exemption to the prohibition of Article VII, Section 14 by eithercontra legem custom or by the contemporaneous construction doctrine. Past illegality does not justify future illegality. La. Civ. Code Art. 3.
As can be seen from the above, the unequivocal prohibition established by Article VII, Section 14 constitutes one of the most enduring and formally consistent constitutional provisions in Louisiana law. Further, it has been consistently recognized and upheld by this office. Attorney General Opinion Nos. 94-515, 93-787, 93-766, 93-665, 93-558, 92-494, 91-104, 90-652, 89-180 and 84-871. With this in mind, we turn to your questions and the donation at issue.
Initially, we note that public school sponsored organizations such as the debate team constitute very worthy organizations that foster, promote and further the education of our youth. Certainly, no one can argue that these organizations do not serve a public benefit to those students who wish to participate.
However, as noted above, the worthiness of the recipient and the actual use of the public funds are immaterial to the constitutionality of the transfer. The prohibition is not affected by the fact that the community may reap some benefit as a result of the disbursement if the constitutional norm has not been satisfied.
The initial issue to be determined regarding the donation is whether a valid legal duty or obligation exists for the City to alienate its funds for this purpose. In this regard, this office is unaware of any provision in the City's Code, and/or Charter, the Louisiana Constitution or the Louisiana Revised Statutes which obligate the City to fund or implement the programs and goals of the debate club. While the programs and goals espoused by this organization are undoubtedly laudatory and serve a public benefit to its participants, you correctly note that the education of children is a matter that the state has intrusted to the various school boards, and not the state's municipalities. In accord are Attorney General Opinion Nos. 93-665, 92-494, 92-392, 92-204, 89-367 and 82-654.
It is therefore the opinion of this office that Article VII, Section 14 of the Louisiana Constitution of 1974 prohibits the donation of public funds of a municipality for use by the Mandeville High School Debate Team. Further, and for the reasons espoused hereinabove, Article VII, Section 14 prohibits the blanket donation of public funds of a municipality to a public school to be used by the school in its discretion. This conclusion applies to the donation in question.
We trust this opinion adequately responds to your inquiries, however, should you have any additional questions concerning these matters, please do not hesitate to contact us.
With kindest regards, I am
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: _____________________________ ROBERT E. HARROUN, III Assistant Attorney General
RPI/ROB3/gbe
cc: Dan Kyle, Legislative Auditor of the State of Louisiana Grover Austin, Assistant Legislative Auditor Roger Harris, General Counsel for the Legislative Auditor Hunter Greene, Staff Attorney
Mr. William Decker Attorney at Law 300 Mariner's Plaza, Suite 301 Mandeville, La 70470
Date Received:
Date Released:
Robert E. Harroun, III Assistant Attorney General