Dear Mr. Gardner:
You have requested an opinion from the Attorney General relative to the legal authority for the City of Monroe (City) to expend public funds for two separate projects. You specifically ask whether the City may provide financial assistance for the renovation of an auditorium in an old high school that was acquired and renovated into a housing complex for the low-income elderly through a HUD 202 Program. The property is owned by the City but leased to a non-profit corporation which obtained the 202 grant and renovated the complex. The second project pertains to the renovation of a parking lot at one of the facilities of the Tri-District Boys' Club, Inc. (Club), a non-profit corporation which provides recreational and educational activities for boy and girl members. In the event the City provides financial assistance, the Club has agreed to open its facilities to all boys and girls without charge.
It is our opinion that the above expenditures and/or donations must be examined in light of Article VII, Section 14 of the Louisiana Constitution of 1974. It provides in pertinent part, the following:
 "§ 14. (A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private. . . .
 (B) Authorized Uses. Nothing in this Section shall prevent (1) the use of public funds for programs of social welfare for the aid and support of the needy;. . . .
 (C) Cooperative Endeavors. For a public purpose, the state and its political subdivisions or political corporations may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation, or individual.
A very comprehensive analysis of the above Section, as it relates to the expenditure of public funds was undertaken by this office in Attorney General Opinion No. 90-651. As noted therein, the constitutional norm for the lawful use of public funds and property is found in Section 14. As quoted above, Paragraph (A) generally prohibits the loan, pledge, or donation of public funds. Exceptions to this prohibition are found in Paragraph (B).
Paragraph (C) of Section 14 authorizes the state and its political subdivisions (i.e., the City) to engage in cooperative endeavors for a public purpose with other governmental agencies, public or private associations and corporations and/or individuals. However, Paragraph (C) merely supplements the prohibition against donations contained in Paragraph (A). It does not create an exemption or exception from the general constitutional norm. In other words, the cooperative endeavor must meet the general standards for the non-gratuitous alienation of public funds established in Paragraph (A). City of PortAllen v. Louisiana Risk Management, et al,439 So.2d 399 (La. 1983) and Attorney General Opinion No. 90-651.
In City of Port Allen, the Supreme Court ruled:
 "The cases that do exist [under La. Const. Art. IV § 12
(1921)] hold primarily that this section is violated whenever the state or political subdivisions seek to give up something of value when [they are] under no legal obligation to do so. . . .
* * *
 Section 14(C) does not help the state, either. There is no indication that it is meant to be an exception to the rule of § 14(A); the exceptions are clearly contained in § 14(B). Thus, even if political subdivisions cooperate for a public purpose, they still may not give away their assets to other political subdivisions, the United States Government, or public or private associations or corporations, or to individuals merely for a `public purpose'." (Emphasis added.)
The threshold requirement of the constitutional doctrine for distinguishing between invalid and lawful expenditures and transfers of public funds and property is the presence of a legal obligation or duty by the transferor to alienate said funds or property. See also Beard-Poulan, Inc. v. Dept. ofHighways, 362 F. Supp. 547 (W.D. La. 1973) andTown of Brusly v. West Baton Rouge Parish PoliceJury, 283 So.2d 288 (La.App. 1st Cir. 1973).
This prerequisite is satisfied by the presence of avalid statute, ordinance, charter or contract. The vehicle by which the obligation is created may, nevertheless, be ultra vires or unconstitutional if it creates no binding legal obligation or if the obligation created is substantially inconsistent with, or beyond the scope of the City's authorized duties. Attorney General Opinion No. 90-651.
As noted above, the requirement of a legal duty is the threshold, but not the only predicate for the constitutionality of the expenditure. Second, the expenditure must also be for a public purpose. Third, the expenditure must create a public benefit proportionate to the cost (i.e., the amount expended). Attorney General Opinion Nos. 93-787, 92-722, 92-127 and 90-651.
The legal obligation/duty standard discussed above was applied by the Second Circuit Court of Appeal in James v. RapidesPolice Jury, 113 So.2d 88 (La.App. 2nd Cir. 1959). The Court adjudged the constitutionality of the police jury's payment to the Red River Valley Improvement Association, Inc. (Association), a nonprofit corporation chartered for the purpose of promoting and encouraging public interest in the development of the Red River Valley. The Court determined that the police jury had a legal obligation (i.e., statutory duty) to build levees, dikes, drainage canals, etc., and that duty encompassed the hiring of expert services and even the hiring of private organizations to perform the work the jury, itself, was obligated and empowered to undertake. However, the Court determined that the services rendered by the Association constituted public relations services which did not, in fact, build levees. Thus, the expenditure of public funds for that purpose was not within the scope of the statutory duty of the police jury.James makes two other points of importance to this constitutional doctrine. The first is that the worthiness of the recipient and of the actual use of public funds is immaterial to the issue of the constitutionality of the transfer by the public entity. As the Court notes:
 "Though it may be regarded as an unnecessary comment, we think it is appropriate in the instant case to observe that these specific prohibitions have been wisely implanted in our fundamental law, for it is conceivable that without such prohibitions the State, or a political subdivision thereof, might so deplete the public fisc by contributions to almost innumerable worthy private and semi-public enterprises as to seriously impair the necessary expense of conducting more prosaic but more important governmental functions."
In other words, to allow unrestricted expenditures of public funds by any and all political subdivisions, public agencies, entities or officers, as long as those entities or persons can imagine some species of "public good" or "public benefit" resulting therefrom, would be to authorize a fragmentation and incoherence in fiscal policy at all levels of state government. This, Article VII, § 14 seeks to prevent by requiring avalid legal authority (even at the contractual level) for the alienation of public funds. The effect of Article VII, § 14, as interpreted by the Supreme Court and the Attorney General, is to give further constitutional protection and definition to the plenary power of the legislature over the public fisc, and to insure that political subdivisions conform to statewide general fiscal policy rather than formulate it on the basis of local expediency within their own territorial jurisdictions.
The second important statement of James is that custom, as expressed in the doctrine of contemporaneous construction, can not modify or negate the operation of the prohibition of Article VII, Section 14. In James, the police jury had been making these same payments to the Association for approximately ten years. Regardless of how long or how often any governmental entity has transferred funds to others, public or private, the duration and repetition of that practice does not create an exemption to the prohibition of Article VII, Section 14 by eithercontra legem custom or by the contemporaneous construction doctrine. Past illegality does not justify future illegality. La. Civ. Code Art. 3.
As can be seen from the above, the unequivocal prohibition established by Article VII, Section 14 constitutes one of the most enduring and formally consistent constitutional provisions in Louisiana law. Further, it has been consistently recognized and upheld by this office. Attorney General Opinion Nos. 94-515, 93-787, 93-766, 93-665, 93-558, 92-494, 91-104, 90-652, 89-180 and 84-871. With this in mind, we turn to your questions and the expenditures at issue.
As discussed, supra, Article VII, Section 14 (A) generally prohibits the donation of public funds to or for any person, association, or corporation, public or private, Paragraph (B) provides an exception for the use of public funds for programs of social welfare for the aid and support of the needy. The project, in question, constitutes the renovation of an auditorium to be used primarily by the low-income elderly. It is the opinion of this office that the HUD 202 Program for the low-income elderly constitutes a program of social welfare for the aid and support of the needy as contemplated in Paragraph B. Accordingly, the City may provide financial assistance for the renovation so long as its primary purpose will be for the benefit of low-income individuals and families. In accord is Attorney General Opinion No. 78-1033.
The renovation/repair of the parking lot does not appear to fall within the exception afforded by Article VII, Section 14 (B). However, as previously discussed, Paragraph (C) authorizes the use of public funds in connection with cooperative endeavors for a public purpose between political subdivisions and public or private associations, corporations or individuals. In this regard, the initial issue to be determined is whether a valid legal duty or obligation exists on the part of the City to alienate its funds for the purpose contemplated in your request.
R.S. 33:4553 authorizes local governing bodies such as the City to establish a system of supervised recreation. It provides in pertinent part, the following:
 "The governing body may establish a system of supervised recreation, and it may, by resolution or ordinance, maintain and conduct the playgrounds, recreation centers and other recreation facilities and activities through the school board, park board, or other existing body, or through a playground and recreation board."
As can be seen from the above, the City is vested with broad authority to develop and administer recreational programs and facilities. Clearly envisioned within this scope is the authority to renovate a parking lot which is necessary to afford the general public access to these public recreational facilities. We, therefore, conclude that the statutory authority contained in R.S. 3:4553 satisfies the threshold requirement of the constitutional doctrine that a valid legal obligation or duty exist on the part of the City to alienate its funds for this purpose.
We further conclude that the expenditure, in question, serves a public purpose — i.e., that of affording the general public access to a recreational and educational facility for the City's children. The remaining issue is whether the City's performance of this legal obligation creates a benefit for the public proportionate to the cost involved.
As noted above, the expenditure will make it possible for the general public of the City of Monroe to utilize a facility which will contribute to the recreational and educational pursuits of its children. We believe this to be a substantive and important contribution which government can make to the quality of life of its citizens. We therefore conclude that the City's contribution toward the minimal cost of the renovation of the parking lot is not so disproportionate to the public benefit to be realized so as to render it unconstitutional.
The cooperative endeavor should be formally implemented in accordance with the procedures set forth in R.S. 33:1321, et seq., entitled "Intergovernmental Functions" and cited as the "Local Services Law."
Finally, in the event the costs associated with either of the two projects, in question, exceed the contract limit as defined in the state's Public Bid Law [i.e., R.S. 33:2212(A)(1)(a)], the provisions of the bid laws must be adhered to.
Trusting this adequately responds to your inquiries, I am
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: _____________________________ ROBERT E. HARROUN, III Assistant Attorney General
RPI/ROB3/gbe
Mr. Thomas V. Gardner, Jr. Assistant City Attorney City of Monroe Post Office Box 123 Monroe, La 71210-0123
Date Received:
Date Released:
Robert E. Harroun, III Assistant Attorney General