Dear Mr. Doherty:
On behalf of the St. Landry Parish Solid Waste Disposal District (the "District"), you requested the opinion of this office concerning whether the District could pay a portion of dumpster service for commercial establishments.
You advised that the District was created by Act No. 289 of the 1980 Regular Session of the Legislature. The powers and duties of the Commission include representing the public interest in providing solid waste collection and disposal for the District and providing for the establishment, operation and maintenance of a parish wide solid waste disposal system. The qualified electors of the District authorized the imposition of a sales tax dedicated for the purposes of paying the cost of construction, acquiring, improving, maintaining and operating a solid waste collection and disposal facility for the parish. Subsequent to the passage and the collection of the tax, the district entered into a collection contract with Waste Management, Inc. To collect non-hazardous, non-toxic solid waste throughout the District. The Commission purchased land and constructed a landfill in order to dispose of the amounts collected.
Residences within the District are not charged any additional fees for the collection of household solid waste. The commission does, however, require commercial establishments, as well as some governmental entities to pay for the cost of disposal bins or containers or at least a portion of the cost. Waste Management charges a monthly rental fee for the disposal containers that are located at these establishments. The Commission pays 20% of the monthly cost out of its tax revenues to Waste Management as a subsidy for the costs to non-residential users.
We call your attention to Op.Atty.Gen. 96-115, a copy of which is enclosed, wherein this office considered a similar question, namely whether a police jury could pay a portion of the monthly rental fee for commercial dumpsters imposed by a private company which collects garbage and trash pursuant to a contract with the police jury. After a detailed analysis of Article VII, Section 14
of the Louisiana Constitution, the opinion concluded that there was no valid legal provision which would authorize the police jury to assume the financial obligation to fund the rental fees.
Likewise, the undersigned was unable to find a legal provision providing a valid legal duty or obligation which would authorize the Commission to pay a portion of dumpster service for commercial establishments. It is therefore the opinion of this office that Article VII, Section 14 of the Louisiana Constitution of 1974 prohibits the expenditure of Commission funds, from whatever source, for the purpose of paying the rental fees for commercial dumpsters utilized by private businesses.
Trusting this opinion adequately responds to your request, we remain
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: _____________________________________ MARTHA S. HESS Assistant Attorney General
RPI/MSH enclosure
OPINION NUMBER 96-115
APRIL 9, 1996
45-C: Environmental — Solid Waste 46-A: Fees and Costs 84: Parishes 90: Police Juries — Powers and Functions 90-A-2: Public Funds: Loans, Pledges or Grants Article VII, Section 14 R.S. 33:4169.1
A Police Jury may not expend public funds to pay the rental fee for commercial dumpsters placed on commercial business located within the parish.
Honorable Glenn W. Alexander District Attorney 38th Judicial District — Cameron Parish Post Office Drawer 280 Cameron, Louisiana 70631
Dear Mr. Alexander:
You have requested an opinion of the Attorney General in your capacity as legal counsel to the Cameron Parish Police Jury ("Police Jury"). You specifically ask whether it is legally permissible for the Police Jury to pay all or a portion of the monthly rental fee being charged by a solid waste disposal company ("Company") for the commercial dumpsters it supplies to private businesses located within the Parish. You further ask whether the payment, if allowable, can be made from the Parish General Fund and/or ad valorem tax revenues dedicated to providing and maintaining garbage collection and disposal services.
The Police Jury is authorized by law to engage in solid waste disposal for its residents. R.S. 33:4169.1 provides, in pertinent part:
 "A. The governing authority of every parish or municipality shall have the following powers:
 (1) To engage in the collection and disposal of garbage and trash within its jurisdiction in cooperation with, or to the exclusion of, other garbage and trash collectors."
You state that garbage and trash collection is currently being accomplished pursuant to a contract between the Police Jury and the Company. These operations are funded through a five mill special tax dedicated to providing and maintaining garbage collection and disposal services within and for the Parish. Pursuant to the contract, the Company charges a monthly rental fee for commercial dumpsters which are located at various private business sites throughout the parish. Historically, this monthly fee has been paid by the various businesses using the dumpsters situated on their properties. This brings us to the issue at hand, to wit: Can the Police Jury assume the responsibility for the payment of these rental fees?
It is our opinion that the expenditure, in question, must be examined in light of Article VII, Section 14 of the Louisiana Constitution of 1974 (the "Constitution"). It provides, in pertinent part, the following:
 "§ 14. (A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private. . . .
 * * *
 (C) Cooperative Endeavors. For a public purpose, the state and its political subdivisions or political corporations may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation, or individual."
A very comprehensive analysis of the above Section, as it relates to the expenditure of public funds, was undertaken by this office in Attorney General Opinion No. 90-651. As noted therein, the constitutional norm for the lawful use of public funds and property is found in Section 14. As quoted above, Paragraph (A) generally prohibits the loan, pledge or donation of public funds. Exceptions to this prohibition are found in Paragraph (B), none of which appear to be relevant to the issue at hand.
Paragraph (C) of Section 14 authorizes the state and its political subdivisions (i.e., the Police Jury) to engage in cooperative endeavors for a public purpose with other governmental agencies, public or private associations and corporations and/or individuals. However, Paragraph (C) merely supplements the prohibition against donations contained in Paragraph (A). It does not create an exemption or exception from the general constitutional norm. In other words, the cooperative endeavor must meet the general standards for the non-gratuitous alienation of public funds established in Paragraph (A).City of Port Allen v. Louisiana Risk Management, etal., 439 So.2d 399 (La. 1983) and Attorney General Opinion No. 90-651.
In City of Port Allen, the Supreme Court ruled:
 "The cases that do exist [under La. Const. Art. IV § 12 (1921)] hold primarily that this section is violated whenever the state or a political subdivision seeks to give up something of value when it is under no legal obligation to do so. . . .
 * * *
 Section 14(C) does not help the state, either. There is no indication that it is meant to be an exception to the rule of § 14(A); the exceptions are clearly contained in § 14(B). Thus, even if political subdivisions cooperate for a public purpose, they still may not give away their assets to other political subdivisions, the United States Government, or public or private associations or corporations, or to individuals merely for a `public purpose'." (Emphasis added.)
The threshold requirement of the constitutional doctrine for distinguishing between invalid and lawful expenditures and transfers of public funds and property is the presence of a legal obligation or duty by the transferor to alienate said funds or property. See also Beard-Poulan, Inc. v. Dept. ofHighways, 362 F. Supp. 547 (W.D. La. 1973) and Townof Brusly v. West Baton Rouge Parish Police Jury,283 So.2d 288 (La.App. 1st Cir. 1973).
This prerequisite is satisfied by the presence of avalid statute, ordinance, charter or contract. The vehicle by which the obligation is created may, nevertheless, be ultra vires or unconstitutional if it creates no binding legal obligation or if the obligation created is substantially inconsistent with, or beyond the scope of the Police Jury's authorized duties. Attorney General Opinion No. 90-651.
As noted above, the requirement of a legal duty is the threshold, but not the only predicate for the constitutionality of the expenditure. Second, the expenditure must also be for a public purpose. Finally, the expenditure must create a public benefit proportionate to the cost (i.e., the amount expended). Attorney General Opinion Nos. 93-787, 92-722, 92-127 and 90-651.
The legal obligation/duty standard was applied by the Second Circuit Court of Appeal in James v. Rapides Police Jury,113 So.2d 88 (La.App. 2nd Cir. 1959). James discusses two fundamental principles of importance related to this constitutional doctrine. The first is that the worthiness of the recipient and of the actual use of public funds is immaterial to the issue of the constitutionality of the transfer by the public entity. As the Court notes:
 "Though it may be regarded as an unnecessary comment, we think it is appropriate in the instant case to observe that these specific prohibitions have been wisely implanted in our fundamental law, for it is conceivable that without such prohibitions the State, or a political subdivision thereof, might so deplete the public fisc by contributions to almost innumerable worthy private and semi-public enterprises as to seriously impair the necessary expense of conducting more prosaic but more important governmental functions."
In other words, to allow unrestricted expenditures of public funds by any and all political subdivisions, public agencies, entities or officers, as long as those entities or persons can imagine some species of "public good" or "public benefit" resulting therefrom, would be to authorize a fragmentation and incoherence in fiscal policy at all levels of state government. This, Article VII, § 14 seeks to prevent by requiring avalid legal authority (even at the contractual level) for the alienation of public funds. The effect of Article VII, § 14, as interpreted by the Supreme Court and the Attorney General, is to give further constitutional protection and definition to the plenary power of the legislature over the public fisc, and to insure that political subdivisions conform to statewide general fiscal policy rather than formulate it on the basis of local expediency within their own territorial jurisdictions.
The second important statement of James is that custom, as expressed in the doctrine of contemporaneous construction, can not modify or negate the operation of the prohibition of Article VII, Section 14. Regardless of how long or how often any governmental entity has transferred funds to others, public or private, the duration and repetition of that practice does not create an exemption to the prohibition of Article VII, Section 14 by either contra legem custom or by the contemporaneous construction doctrine. Past illegality does not justify future illegality. La. Civ. Code Art. 3.
As can be seen from the above, the unequivocal prohibition established by Article VII, Section 14 constitutes one of the most enduring and formally consistent constitutional provisions in Louisiana law. Further, it has been consistently recognized and upheld by this office. Attorney General Opinion Nos. 94-515, 93-787, 93-766, 93-665, 93-558, 92-494, 91-104, 90-652, 89-180 and 84-871. With this in mind, we turn to your inquiry and the expenditure at issue.
The initial issue to be determined regarding the expenditure is whether a valid legal duty or obligation exists for the Police Jury to assume this financial obligation. In this regard, we have reviewed the constitutional and statutory provisions which are relevant to the Police Jury's authority to effectuate a system of solid waste collection. We have been unable to find the presence of any valid legal provision which would authorize the Police Jury to fund these rental fees. In addition, representatives of the Police Jury have advised this office that there are no ordinances or provisions within the solid waste collection contract with the Company that provide for this expenditure. Having determined that a valid legal duty or obligation is not present, we pretermit a discussion of the remaining two requirements.
It is therefore the opinion of this office that Article VII, Section 14 of the Louisiana Constitution of 1974 prohibits the expenditure of Police Jury funds, from whatever source, for the purpose of paying the rental fees for commercial dumpsters utilized by private business.
We trust this opinion adequately responds to your inquiry, however, should you have any additional questions concerning these matters, please do not hesitate to contact us With kindest regards, I am
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: ______________________________________ ROBERT E. HARROUN, III
Assistant Attorney General
RPI/Rob, III