Dear Ms. Glasper:
This office is in receipt of your recent request for an Attorney General's opinion regarding contributions by the Madison Parish Police Jury to various entities within Madison Parish.
According to your correspondence, a member of the Madison Parish Police Jury has requested that the Police Jury contribute $50.00 per month to the Madison Parish Tourism Commission, an entity created by the Police Jury and under the authority of the Police Jury, and $50.00 per month to the Hermione House Museum, presumably a private entity within Madison Parish. Additionally, a group of citizens who sponsor, coach and organize local youth athletic activities has requested funding for the purchase of athletic equipment. According to your correspondence, the Parish has funds available for recreational purposes, and the group in question has assumed the responsibilities of a defunct Parish recreation board.
The Madison Parish Police Jury seeks our opinion as to whether or not these contributions are permissible.
Implicitly, the issues raised by your request must be examined in light of La. Const. Art. VII, Sec. 14, which prohibits political subdivisions such as Madison parish from loaning, pledging or donating public funds, credit, property or things of value to or for any person, firm or corporation, public or private. This constitutional provision has been interpreted by the Louisiana Supreme Court in City of Port Allen v. Louisiana Municipal Risk Agency, 439 So.2d 399 (La. 1983), which held that the Constitution is violated whenever the state or a political subdivision seeks to give up something of value when it is under no obligation to do so.
The jurisprudence of this state also makes it clear that the worthiness of the contemplated use of public funds is immaterial to the constitutionality of a transfer of public funds. In James v. Rapides Parish Police Jury, 113 So.2d 88 (La.App. 2nd cir. 1959), the court interpreted La. Const. (1921) Art. IV, Sec. 12, a provision almost identical to the present Art. Vii, Sec. 14 (A). Therein, the court stated:
 "these specific prohibitions have been wisely implanted in our fundamental law, for it is conceivable that without such prohibitions the state, or a political subdivision thereof, might so deplete the public funds by contributions to almost innumerable worthy private and semi-public enterprises as to seriously impair the necessary expense of conducting more prosaic but important government functions." 113 So.2d at p. 93.
We are unaware of any provision of law that would obligate the use of public funds for the endowment of the entities or organizations in question, despite their laudatory missions. In our opinion, if the transfer of funds to either of these entities were in the nature of an endowment or gift, then such transfer would constitute a donation, in violation of La. Const. Art VII, Sec. 14.
On the other hand, if any of the entities or organizations referred to in your letter provide a service that would otherwise have to be provided by the Parish, then the provision of funding to that entity or organization would be in the nature of a constitutionally sanctioned cooperative endeavor. We call your attention to the Supreme Court's decision in Gustev. Nicholls College Foundation, 564 So.2d 682 (La. 1990). Therein, a transfer of public funds by the Nicholls State University Alumni Federation to the Nicholls College Foundation was held to be "given and accepted "under authority of the constitution and laws of this state' in furtherance of a governmental purpose", as opposed to a donation. The Court concluded that the funds were "transferred in the discharge of the Federation's constitutional or legal duties", and were accepted by the Foundation with a commitment to assist the Federation in carrying out its constitutional and legal duties".
We note that the interests of Madison Parish in the provision of recreational opportunities and equipment to its citizens and children could be met by providing funding or equipment to the citizen's group, referred to in your letter, that organizes youth athletic activities in the Parish. In our opinion, such funding is in the nature of a constitutionally sanctioned cooperative endeavor. Similarly, it would seem that the provision of funding to the Madison Parish Tourism Commission, an entity created by the Police Jury presumably to serve tourism (and economic development) functions that would otherwise have to be performed by the Parish, would also be in the nature of a constitutionally sanctioned cooperative endeavor.
With regard to the Hermoine House Museum, we note that your letter indicates it is a private entity. You did not indicate that the Museum provides any services to or on behalf of Madison Parish. As such, although we are sure the Museum is an asset to the Parish, it is our opinion that the provision of a monthly stipend to this entity would violate La. Const. Art. VII, Sec. 14. of course, if we are incorrect and the museum will be providing a service on behalf of the Parish, then such funding would be in the nature of a constitutionally sanctioned cooperative endeavor.
In answer to your question about cooperative endeavor agreements, I am enclosing a copy of Opinion No. 93-787, which goes into some detail about cooperative endeavors. Additionally, please be advised that it is not our opinion that every cooperative endeavor agreement must be reduced to writing. of course, if an agreement is reduced to writing, the obligations of the parties are clear to any one who reads it, and are subject to less misunderstanding.
We trust the foregoing to be of assistance. Please do not hesitate to contact this office if we can be of assistance to you or Madison Parish in the future.
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 BY: ____________________________ JEANNE-MARIE ZERINGUE BARHAM Assistant Attorney General
RPI/JMZB/dam Enclosure
OPINION NUMBER 93-787
90-A-2 PUBLIC FUNDS — Loans, Pledge or Grants
La. Const. Art. VII, Sec, 14
General discussion of cooperative endeavors and the factors which must be present for City of Lafayette's contracts with "external agencies" to be constitutionally sanctioned.
Mr. Michael D. Hebert Assistant City Attorney 600 Jefferson Street, Box 52 Suite 504 Lafayette, Louisiana 70501
Dear Mr. Hebert:
In your capacity as an Assistant City Attorney to the City of Lafayette, you have requested the opinion of this office regarding contracts of the City of Lafayette with private and/or non-profit entities, referred to in your letter as external agencies. You advise that the City of Lafayette, in furtherance of the duties and purposes of the City's Department of Community Development, has entered into, and will enter into, certain contracts with external agencies for the provision of various social services or educational, recreational, or cultural programs within the City of Lafayette.
Specifically, you have asked this office to address whether such contracts constitute prohibited donations of public funds under Article VII, Section 14 of the Louisiana Constitution of 1974.
According to your letter, the funds paid to each external agency by the City of Lafayette are paid only in accordance with the contract, and payments are only made for services which are consistent with, and supportive of, the duties and functions of an established department of the City of Lafayette. You also advise that all services provided by the external agencies will be provided within the City of Lafayette. Furthermore, you advise that each external agency is required to make progress reports and an accounting to the City, and that each external agency is subjected to audits by the City in order to verify that the funds are being used for the public purpose set forth in each contract.
Your question raises a number of issues, as it is presented broadly, as opposed to being limited to a particular contract, for particular services, with a particular "external agency".
As I am sure you are aware, the mere execution of a document nominated as a "contract" does not obviate the constitutional prohibition of donations of public funds by political subdivisions. However, Art. VII, Sec. 14 (C) authorizes the state and its political subdivisions to engage in "cooperative endeavors" for a public purpose with other governmental agencies, public or private corporations, or individuals. This office has previously opined that a constitutionally sanctioned cooperative endeavor must meet a three part test: (a) the public agency has a legal obligation to expend public funds, (b) the expenditure must be for a public purpose, and (c) the expenditure must create a public benefit proportionate to its cost. Attorney General's Opinion No. 93-164.
In our opinion, contracts such as the ones you describe can be considered constitutionally sanctioned cooperative endeavors as long as the contracts meet the three part test set forth above.
As you are aware, the requirement for a "legal obligation" for the expenditure or transfer of public funds has been recognized by the Louisiana Supreme Court in City of Port Allen v. Louisiana Municipal RiskManagement Agency, Inc., 439 So.2d 399 (La. 1983). As stated in the Cityof Port Allen decision, "even if political subdivisions cooperate for a public purpose, they still may not give away their assets merely for a public purpose." As we interpret that decision, the "legal obligation" referred to in City of Port Allen must be present even if the "external agency" provides a public benefit or service, and even if the services provided are "consistent with, and supportive of the duties and functions of an established Department of the City of Lafayette".
This office has construed the "legal obligation" requirement referred to in the City of Port Allen decision to be a requirement that the purpose and power for a particular expenditure of public funds be "sanctioned" or "authorized by law" or in the "discharge of a legal duty". Attorney General's Opinion No. 92-204. Our opinions also refer to the requirement of "an underlying legal obligation or authority" for the transfer of public funds. Attorney General's Opinions Nos. 92-543, 92-494, 92-402, 92-204.
Your letter suggests that the Supreme Court, in City of Port Allen, may not have been attempting to announce the requirement of a "legal obligation' as a hard and fast rule. We respectfully disagree with your suggestion, as the Court has subsequently adhered to its requirement of a "legal obligation' or "legal duty'. In Guste v. Nicholls CollegeFoundation, 564 So.2d 682 (La. 1990), a transfer of public funds by the Nicholls College Foundation was held to be "given and accepted "under the authority of the constitution "and laws of this state' in furtherance of a governmental purpose", as opposed to a donation. The Court concluded that the, funds were "transferred in the discharge of the Federation'sconstitutional or legal duties", and were accepted by the Foundation, "with a commitment to assist the Federation in carrying out itsconstitutional and legal duties". (Emphasis added).
This office's recognition of the necessity of a "legal obligation" for the transfer of public funds is illustrated by Attorney General's Opinion No. 92-494, which provides that an assessor has no "legal obligation" to fund a teen organization or a mental health unit, and by Attorney General's Opinion No. 92-204, which provides that a hospital service district cannot pay the Chamber of Commerce dues of its hospital physician.
You have also requested this office to give consideration to the argument that "remunerative donations" may not be constitutionally prohibited. In light of our opinion that a legal obligation for the expenditure of public funds must be present if same is to be considered constitutionally sanctioned, a discussion of "remunerative" donations is pretermitted.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: ______________________________ JEANNE-MARIE ZERINGUE Assistant Attorney General
RPI:JMZ:jav