Dear Ms. Jones:
Your request for an Attorney General's Opinion has been assigned to me for research and reply. On behalf of the Village of Natchez, you have asked for our opinion on the following issues:
 (1) Is it legal for parish prisoners to clean personal, private property?, and
 (2) Whether the Mayor has the sole-authority to cancel and reschedule a regularly scheduled monthly meeting?
With respect to your first question, Louisiana Constitution Article VII, Section 14 prohibits the donation of public funds, credit, property, or things of value of the state or any political subdivision. This office has consistently held that public funds or property may not be used for a private purpose. See Attorney General Opinion Nos. 87-464 and 05-0299. Copies of these opinions are attached for your review.
In accord with these opinions, we believe the use of parish prisoners to clean private property would be tantamount to a prohibited donation and such activities are not permissible under Louisiana law. The parish prisoners are within the care and custody of the parish and as such are an extension of the parish. Any labor or service performed by the prisoners would constitute a thing of value, requiring an analysis under Article VII, Section 14.
With respect to your second question, we addressed a similar question in Attorney General Opinion No. 93-644. A copy of this opinion is also attached for your review. In Attorney General Opinion No. 93-644, we opined that "the mayor, on his own, cannot cancel a regular meeting of the board of alderman which is set by ordinance. . .".
Our conclusion was guided by our reading of La.R.S. 33:405, which provides that the mayor and board of aldermen shall hold not less than one regular meeting in each *Page 2 
month on a date and at a place and hour to be fixed by ordinance, and a meeting, whether regular, special, or emergency, "may be continued" to another day announced at the meeting with the consent of a majority of the members of the board, and where there is a lack of a quorum, the meeting may be continued to a date announced at the meeting with the consent of the majority of aldermen present, or if only one is present, he sets a date.
This indicated to us that the procedure to be followed is to continue a meeting to another date, or simply adjourn, rather than having the mayor unilaterally cancel a meeting set by ordinance. Accordingly, we believe the Mayor may not unilaterally cancel a regularly scheduled monthly meeting. The meeting should be continued to another day with the consent of a majority of the members of the board, or a majority of aldermen present, or if only one is present, he or she sets a date.
We trust this adequately responds to your request. If you should have any questions about the response contained herein, please feel free to contact our office.
 Yours very truly,
 JAMES D. "BUDDY" CALDWELL
 ATTORNEY GENERAL
 BY: MICHAEL J. VALLAN
 Assistant Attorney General
 JDC/MJV/crt
 Attachments *Page 1 
 Office of the Attorney General State of Louisiana Opinion. No. 87-464 November 12, 1987
71........Municipalities
90-A-2. . .Public Funds-Loans, Pledge or Grants
Article VII, Section 14 of the Louisiana Constitution of 1974
Mr. Jack H. McLemore, Jr.
City Attorney
Town of Vidalia may not use municipally owned equipment to perform work on privately owned property.
Dear Mr. McLemore:
You requested an opinion from this office concerning the use of municipal equipment on private property. Specifically, you asked if the Town of Vidalia may use municipally owned equipment to perform work on private property if adequate payment for said use is made by the owner of the private property to the municipality.
It has been the opinion of this office that in the absence of a cooperative endeavor between the parties involved, the use of public equipment on privately owned property is prohibited. This opinion is based on Article VII, Section 14 of the Louisiana Constitution of 1974 which provides, in part, as follows:
 Section 14. (A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private. Neither the state nor a political subdivision shall subscribe to or purchase the stock of a corporation or association or for any private enterprise.
*******
 (C) Cooperative Endeavors. For a public purpose, the state and its political subdivisions or political corporations may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or *Page 2 
private association, corporation, or individual.
Your opinion request failed to indicate the existence of a cooperative endeavor between the Town of Vidalia and the owner of the private property involved. Thus, it is our assumption that a cooperative endeavor does not exist.
Therefore, it is the opinion of this office that the Town of Vidalia may not use municipally owned equipment to perform work on privately owned properly.
It is hoped that this opinion has been of some assistance to you. If we may be of any further assistance, please feel free to contact us.
Sincerely,
William J. Guste, Jr. Attorney General By: Cassandra A. Simms Assistant Attorney General *Page 1 
 Office of the Attorney General State of Louisiana Opinion No. 05-0299 April 26, 2006. Syllabus
90-A-2 Public Funds — Loan, Pledge or Grants
Art. 7, Sec. 14 of La.Const.
Summary: Parish may not repair roads on private property used primarily for the benefit of private individuals or connect private residences to public sewer lines. Parish may, however, connect sewer lines for residents who cannot afford to do so themselves, as long as it is done through an established program for the aid and support of the needy, and the program uses objective criteria to determine who is needy.
Mr. Kevin D. Conner Council Attorney
Dear Mr. Conner,
On behalf of the Plaquemines Parish Government, you have requested an Attorney General's opinion regarding the use of public funds on private property. Specifically, you ask whether the Parish may use its equipment, materials and labor to repair roads on private property that are used primarily for the benefit of private landowners. You indicate the roads are in such poor condition that the postmaster of one town has refused to travel on them to deliver mail and ambulances and other emergency vehicles have difficulty traveling on them as well. Second, you ask what the Parish may do to help private citizens who cannot afford to pay for sewer connections from their homes to public sewer lines.
In order to answer your questions, we refer you to Art. 7, Sec. 14(A) of the La.Const., which prohibits the donation of public "funds, credit, property, or things of value of the state or any political subdivision." Political subdivisions have been found to have violated this provision if they gave up something of value when they were under no legal obligation to do so.[1] The jurisprudence also makes it clear that the worthiness of the contemplated use of public funds is immaterial to the constitutionality of the transfer of public funds.[2] *Page 2 
Thus in response to your first question, the Parish's use of public funds, materials or labor to repair roads on private property would be an unlawful donation in violation of Article VII, Section 14(A).[3]
Similarly, this office has consistently found that the use of public funds, materials or labor to provide sewer connections to private homes violates the prohibition against donating public funds.[4] However, Paragraph (B) of Section 14 contains an exception to this general prohibition and allows "the use of public funds for programs of social welfare for the aid and support of the needy." This office has previously found that the exception in Paragraph (B) is operative as long as those assisted through such a program are screened pursuant to objective criteria to insure that they are needy.[5]
Accordingly, while the Parish may not simply connect any private residences to the public sewer lines, it may expend funds or provide materials and labor to connect sewer lines for residents who cannot afford to do so themselves, as long at it is done through an established program for the aid and support of the needy, and the program uses objective criteria to determine who is needy.[6] The Parish may establish such a program itself or it may enter into an agreement with an existing program to provide these services
We trust this adequately addresses your concerns. If you have additional questions, please contact our office.
With kindest regards, we remain
Yours very truly, Charles C. Foti, Jr. Attorney General
By: Denise Brou Fitzgerald Assistant Attorney General *Page 1 
 Office of the Attorney General State of Louisiana Opinion No. 93-644 November 5, 1993.
71 Municipalities; 77 Officers
R.S. 33:405
The mayor, on his own, cannot cancel a regular meeting of the board of alderman which is set by ordinance, and alderman can call special meetings as they see fit.
Donald D. Landry, Esq.
Dear Mr. Landry:
This office is in receipt of your request for an opinion of the Attorney General in regard to meetings of the governing authority of a Lawrason Act community.
You indicate the Town of Broussard has meetings scheduled for the Board of Aldermen on the second and fourth Tuesdays of each month at 5:45 p.m. at City Hall. The mayor cancelled a Tuesday meeting by placing a notice at City Hall since the only item on the agenda was withdrawn by the citizen who requested it. The mayor felt since there was nothing to discuss, there was no need for the meeting, and it would save taxpayers money.
Also, the mayor is resisting calling of special meetings on the basis it is needless expense and the business can be handled at the regularly scheduled meetings. He feels that special meetings should only be called when something out of the ordinary has to be handled by the Town.
Based upon these facts your ask the following questions:
1. Can the Mayor of a Lawrason Act municipality cancel a regularly scheduled meeting of the Board of Aldermen when there is nothing to be discussed at that meeting; and
2. Is the Board of Aldermen limited in any way as to the number of special meetings they may call per month.
R.S. 33:405 provides that the mayor and board of aldermen shall hold not less than one regular meeting in each month on a date and at a place and hour to be fixed by ordinance. Based upon this statute and the statement that meetings are regularly *Page 2 
scheduled on the second and fourth Tuesdays of each month, we must conclude that these meeting times are set by ordinance. We are of the opinion that the mayor, on his own initiative, cannot cancel a regular meeting set by ordinance which is the law of the municipality.
We find support for this conclusion in R.S. 33:405(F). That paragraph provides a meeting, whether regular, special, or emergency, "may be continued" to another day announced at the meeting with the consent of a majority of the members of the board, and where there is a lack of a quorum, the meeting may be continued to a date announced at the meeting with the consent of the majority of aldermen present, or if only one is present, he sets a date. This indicates to us the procedure to be followed is to continue a meeting to another date, or simply adjourn, rather than having the mayor unilaterally cancel a meeting set by ordinance.
R.S. 33:405 (C) states special meetings of the mayor and board of aldermen "may be called by the mayor or a majority of the members of the board. This office has recognized that R.S. 33:405 requires at least one regular meeting per month, but found there is no maximum limit for the regular or special meetings called per month. Atty.Gen.Op. No. 82-338.
We note that R.S. 33:405 had provided that special meetings of the mayor and board of aldermen could be called "for the transaction of important business at the instance of the mayor or any aldermen", but by Act 890 of 1985 it now simply states that special meetings may be called by the mayor or a majority of the members of the board" without the specification it be for the transaction of important business.
Thus, we must conclude that the Board of Aldermen are not limited by state law in the number of special meetings they may call, and a special meeting may be called by a majority of the members of the board as long as there is compliance with the public notice requirements.
We hope this sufficiently answers your questions.
Sincerely yours, Richard P. Ieyoub Attorney General By: Barbara B. Rutledge Assistant Attorney General
[1] City of Port Allen v. La. Risk Management, 439 So.2d. 399 (La. 1983).
[2] James v. Rapides Parish Police Jury, 113 So.2d 88 (La.App. 2nd Cir. 1959).
[3] See Atty. Gen. Op. Nos. 01-229, 00-278, and 89-545.
[4] See Atty. Gen. Op. Nos. 03-043, 02-341 and 00-485.
[5] See Atty. Gen. Op. Nos. 00-174, 04-088 and 94-157.
[6] See Atty. Gen. Op. No. 96-348.