Dear Gen. Patin:
You have requested an opinion of the Attorney General regarding the legality of an Employee Recognition Program (the "Program") which you propose to establish for employees at the Department of Transportation and Development ("DOTD") Headquarters. Under the Program, employees at all levels, from secretarial to management, may be nominated by other employees/supervisory personnel for consideration by an Award Selection Committee ("Committee").
Categories established under the Program and the awards associated therewith are comprised of:
CATEGORY AWARD(S)
Employee of the Quarter $100 Gift Certificate, Reserved Parking Space, Framed Certificate, Picture in Newsletter, and Name Engraved on a Plaque to be Displayed at Headquarters Building
Employee of the Year Engraved Plaque, $500 Gift Certificate, Article in Newsletter and Name Engraved and Photo Displayed on a Plaque Located in the Headquarters Building
Employee Suggestion Program Awards Certificate of Merit, $25.00 Gift Certificate and Suggestion Forwarded to State Incentive Award Program
Secretary's Award of Excellence Coin/Key Chain w/Inscription and Framed Certificate of Merit
Manager of the Quarter Framed Certificate of Merit, $50.00 Restaurant Gift Certificate and Recognition in Newsletter
Manager of the Year $250.00 Restaurant Gift Certificate, Engraved Plaque and Name and Photograph on Plaque Displayed in Headquarters Building
CATEGORY AWARD(S)
Length of Service Awards:
5 through 15 Years Framed Certificate
20 through 25 Years $41.00 Service Pin and Framed Certificate
30 and above Years $125.00 Service Pin and Framed Certificate
Criteria to be considered in making nominations and awards include overall job performance, accomplishments, community involvement, personal commitment to the job, initiative, integrity, self-motivation, professionalism, ability to inspire teamwork and productivity.
This office recognizes the crucial role employee recognition plays in the enhancement of employee morale, job satisfaction, loyalty, motivation and productivity. While plans established to implement such recognition, such as the one under consideration, are laudatory, admirable and creative, they must be examined in light of applicable state statutory and constitutional guidelines governing the expenditure of public funds. We believe ArticleVII, Section 14 of the 1974 Louisiana Constitution to be controlling. It provides, in pertinent part, the following:
 " § 14. (A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private . . . .
 * * *
 (C) Cooperative Endeavors. For a public purpose, the state and its political subdivisions or political corporations may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation, or individual."
A very comprehensive analysis of the above Section, as it relates to the expenditure of public funds was undertaken by this office in Attorney General Opinion No. 90-651. As noted therein, the constitutional norm for the lawful use of public funds and property is found in Section 14. As quoted above, Paragraph (A) generally prohibits the loan, pledge, or donation of public funds. Exceptions to this prohibition are found in Paragraph (B), none of which appear to be relevant to the issue at hand.
Paragraph (C) of Section 14 authorizes the state and its political subdivisions (i.e., the DOTD) to engage in cooperative endeavors for a public purpose with other governmental agencies, public or private associations and corporations and/or individuals. However, Paragraph (C) merely supplements the prohibition against donations contained in Paragraph (A). It does not create an exemption or exception from the general constitutional norm. In other words, the cooperative endeavor must meet the general standards for the non-gratuitous alienation of public funds established in Paragraph (A). City of PortAllen v. Louisiana Risk Management, et al, 439 So.2d 399
(La. 1983) and Attorney General Opinion No. 90-651.
In City of Port Allen, the Supreme Court ruled:
 "The cases that do exist [under La. Const. Art. IV § 12 (1921)] hold primarily that this section is violated whenever the state or political subdivisions seek to give up something of value when [they are] under no legal obligation to do so . . . .
 * * *
 Section 14(C) does not help the state, either. There is no indication that it is meant to be an exception to the rule of § 14(A); the exceptions are clearly contained in § 14(B). Thus, even if political subdivisions cooperate for a public purpose, they still may not give away their assets to other political subdivisions, the United States Government, or public or private associations or corporations, or to individuals merely for a `public purpose'." (Emphasis added.)
The threshold requirement of the constitutional doctrine for distinguishing between invalid and lawful expenditures and transfers of public funds and property is the presence of a legal obligation or duty by the transferor to alienate said funds or property. See also, Beard-Poulan, Inc. v. Dept. ofHighways, 362 F. Supp. 547 (W.D. La. 1973) and Town ofBrusly v. West Baton Rouge Parish Police Jury, 283 So.2d 288
(La.App. 1st Cir. 1973).
This prerequisite is satisfied by the presence of avalid statute, ordinance, charter or contract. The vehicle by which the obligation is created may, nevertheless, be ultra vires or unconstitutional if it creates no binding legal obligation or if the obligation created is substantially inconsistent with, or beyond the scope of the DOTD's authorized duties. Attorney General Opinion No. 90-651.
As noted above, the requirement of a legal duty is the threshold, but not the only predicate for the constitutionality of the expenditure. Second, the expenditure must also be for a public purpose. Third, the expenditure must create a public benefit proportionate to the cost (i.e., the amount expended). Attorney General Opinion Nos. 93-787, 92-722, 92-127 and 90-651.
The legal obligation/duty standard discussed above was applied by the Second Circuit Court of Appeal in James v. Rapides PoliceJury, 113 So.2d 88 (La.App. 2nd Cir. 1959). Therein, the Court noted that the worthiness of the recipient and of the actual use of the public funds is immaterial to the issue of the constitutionality of the transfer/expenditure by the public entity. As the Court notes:
"Though it may be regarded as an unnecessary comment, we think it is appropriate in the instant case to observe that these specific prohibitions have been wisely implanted in our fundamental law, for it is conceivable that without such prohibitions the State, or a political subdivision thereof, might so deplete the public fisc by contributions to almost innumerable worthy private and semi-public enterprises as to seriously impair the necessary expense of conducting more prosaic but more important governmental functions." In other words, to allow unrestricted expenditures of public funds by any and all political subdivisions, public agencies, entities or officers, as long as those entities or persons can imagine some species of "public good" or "public benefit" resulting therefrom, would be to authorize a fragmentation and incoherence in fiscal policy at all levels of state government. This, Article VII, Section 14 seeks to prevent by requiring a valid legal authority (even at the contractual level) for all alienation of public funds. The effect of Article VII, Section 14, as interpreted by the Supreme Court and the Attorney General, is to give further constitutional protection and definition to the plenary power of the legislature over the public fisc, and to insure that political subdivisions confirm to statewide general fiscal policy rather than formulate it on the basis of local expediency within their own territorial jurisdictions.
The second important statement of James is that custom, as expressed in the doctrine of contemporaneous construction, can not modify or negate the operation of the prohibition of Article VII, Section 14. In James, the police jury had been making these same payments to the Association for approximately ten years. Regardless of how long or how often any governmental entity has transferred funds to others, public or private, the duration and repetition of that practice does not create an exemption to the prohibition of Article VII, Section 14 by eithercontra legem custom or by the contemporaneous construction doctrine. Past illegality does not justify future illegality. La. Civ. Code Art. 3.
As can be seen from the above, the unequivocal prohibition established by Article VII, Section 14 constitutes one of the most enduring and formally consistent constitutional provisions in Louisiana law. Further, it has been consistently recognized and upheld by this office. Attorney General Opinion Nos. 94-515, 93-787, 93-766, 93-665, 93-558, 92-494, 91-104, 90-652, 89-180 and 84-871. With this in mind, we turn to your questions and the expenditures at issue.
A review of the Louisiana Revised Statutes evidences very few statutorily sanctioned programs for employee recognition and/or incentive. At the local level, R.S. 33:1891, et seq., establishes a Municipal Employees Merit Award System authorizing the granting of limited merit awards to full-time permanent employees to encourage and reward unusual and meritorious suggestions and/or accomplishments which promote economy and efficiency in the performance of any function of municipal government.
At the state level, R.S. 39:366.1 establishes a State Employee Incentive Award Committee within the Office of the Governor, Division of Administration. The Committee is authorized to empower agencies such as DOTD to create Agency Employee Incentive Award Committees. These agency committees must submit their proposed structure to the state committee for prior approval. Recommendations for incentive awards are made by the state-approved agency committees to the Louisiana Civil Service League ("League"). The League determines whether or not to make the award and notifies the appropriate committee of its decision. Awards are made only from private funds collected and administered by the League. R.S. 39:366.3 enumerates the determining criteria upon which a recommendation is judged. A review of these criteria indicates that they are very restrictive and stringent.
It is our understanding from talking with representatives of your office that, while DOTD once participated in the state plan, its Agency Employee Incentive Award Committee has since been disbanded and is no longer functional. We have further been advised that the Award Selection Committee proposed for the Program is not constituted under R.S. 39:366.1. Thus, your proposed Program is not one which has been statutorily recognized so as to satisfy the threshold requirement of the existence of a legal obligation or duty for the expenditure of public funds under Article VII, Section 14(C).
We have reviewed previous opinions issued by this office and believe the following to be relevant to your inquiry:
Opinion No. 76-1766 addressed the issue of whether a public entity could present various awards for employee recognition. The awards contemplated were monetary awards, clothing, a personalized safety hat and a plaque or certificate. The opinion held that the monetary award and the clothing constituted a prohibited remunerative donation. The personalized safety hat and plaque or certificate did not constitute such a donation and were not constitutionally prohibited.
Opinion No. 85-700 concluded that cash safety awards to Sheriff's Deputies and other Criminal Department employees constituted prohibited donations. However, the opinion does note that a certificate or other award, such as a plaque or trophy of moderate cost, would be an acceptable manner of recognizing the employee without violating the provisions of state law.
Opinion No. 87-318 proposing to pay teachers $40.00 per day for each day of sick leave not used and an additional $100.00 for perfect attendance would constitute a violation of Article VII, Section 14.
Opinion No. 92-110 held that a police jury could not implement an "incentive" plan which provided for the payment to its employees of $25.00 for each sick day not taken during the year, subject to a maximum of twelve days. Finally, Opinion No. 92-737 held that a public entity could give plaques of moderate cost to employees for special recognition. However, the granting of gift certificates and savings bonds constituted prohibited donations under the state's constitution.
For the reasons set forth hereinabove, it is the opinion of this office that the following awards, listed by category, constitute remunerative donations which are prohibited by Article VII, Section 14:
CATEGORY AWARD(S)
Employee of the Quarter $100 Gift Certificate
Employee of the Year $500 Gift Certificate
Manager of the Quarter $50.00 Restaurant Gift Certificate
Manager of the Year $250.00 Restaurant Gift Certificate
With regard to the above categories, we find that the remaining awards — frames, plaques, coin/key chains and certificates — to be permissible. In addition, we conclude that the $125.00 plaques to be displayed at various DOTD locations to be reasonably moderate and, therefore, acceptable.
As noted above, the legislature has implemented a statutory program for the recognition of cost-savings suggestions from State employees. While the award of a frame to a DOTD employee for such a suggestion is permissible, we recommend that any cash award be effected pursuant to the provisions contained in R.S.39:366.1, et seq.
Finally, with regard to the service awards, we are of the opinion that the $41.00 service pin constitutes a permissible form of employee recognition, being reasonably moderate in price.
With regard to the $125.00 service pin, the information provided this office does not describe the nature or composition of this specific award. We do believe that some discretion should be accorded a public entity in the determination of what constitutes reasonableness as it relates to the cost of such an award. However, we are of the opinion that an award of this type should identify, in its composition, the employee's association with the State of Louisiana (e.g., by inscription or state seal). Conversely, a service pin consisting only of an expensive piece of jewelry comprised of a precious stone would not constitute a permissible form of recognition, but rather a prohibited donation. In this regard, we recommend that you contact the Office of Legislative Auditor for any guidelines they may have relating to awards of this nature.
Trusting this adequately responds to your inquiries, I am
Very truly yours,
 RICHARD P. IEYOUB
Attorney General
 By: ROBERT E. HARROUN, III
Assistant Attorney General
Brig. Gen. Jude W.P. Patin, Retired Secretary, DOTD Post Office Box 94245 Baton Rouge, Louisiana 70804-9245
Date Released: Date Received:
Robert E. Harroun, III Assistant Attorney General