Dear Mr. Coreil:
You requested the opinion of this office on behalf of the Evangeline Parish Solid Waste Commission (the "Commission") regarding whether the Commission may use tax funds collected by it to offset additional fees charged by the waste disposal company to commercial and industrial businesses in the parish.
You furnished this office with a copy of the Act 710 of the 1984 Regular Session (the "Act") which created the Commission and authorized the Commission to provide for the establishment, operation, and maintenance of a parishwide solid waste disposal system, including areas within the corporate limits of municipalities within the parish. The Act further authorizes the Commission to promulgate rules and regulations governing the conduct of the solid waste disposal operations of the parish and to enter into contracts to effectuate the provisions of the Act.
You also furnished this office with a copy of the sales tax proposition, which provides in pertinent part as follows:
 Shall the Evangeline Parish Solid Waste Disposal Sales Tax District . . . be authorized to levy and collect . . . a tax of one percent (1%) (the "Tax") upon the sale at retail . . . with the avails or proceeds of the tax (after first paying the reasonable and necessary costs and expenses of collecting and administering the tax) to be deposited by the collector of the Tax for the . . . Commission . . . to be dedicated and used by the Commission solely for the purpose of paying the cost of constructing, acquiring, improving, maintaining and operating solid waste collection and disposal facilities for the District . . ." (Emphasis added)
In addition to the foregoing, this office has received excerpts from the Contract and the Amendment to Contract between the Commission and Browning-Ferris, Inc. (collectively, the "Contract"). The Contract provides that "the contractor shall offer additional services to all commercial and industrial customers within the Parish for the life of the contract. The commercial and industrial customer have the option to reject or accept the service. The Contractor shall supply necessary containers . . . should the offer be accepted."
Article 3 of the Contract concerning "Type of Collection" contains a paragraph concerning small commercial establishments, as follows:
 "To the small commercial establishments, the Contractor shall provide curbside collection services to small commercial establishments generating up to five (5) 35-gallon containers of solid waste. Weight of each container with contents is not to exceed 75 pounds. Collection per unit shall be for the number of times per week as specified in the proposal forms."
 "Commercial Solid Waste" is defined in the Contract to mean "all bulky waste, construction debris, garbage and rubbish generated by a producer at a commerical (sic) unit." "Commercial and Industrial Unit" is defined in the Contract to mean "all premises, locations or entities, public or private, requiring refuse collections within the Parish except the Town of Mamou, not a residential unit."
Your specific question is:
 Considering that the tax call by the Evangeline Parish Solid Waste Commission did not limit the expenditure of funds to residential pickup and because the contract of the Evangeline Parish Solid Waste Commission with Browning-Ferris, Inc. clearly states that additional services with commercial and industrial customers were to be negotiated (for waste pickup only and not in the nature of renting dumpsters), and because the act creating the commission clearly states that the Evangeline Parish Solid Waste Commission is charged with the responsibility "for the establishment, operation and maintenance of a parishwide solid waste disposal system", which is not limited to residential and does include commercial, therefore is it proper for the Evangeline Parish Solid Waste Commission to utilize tax funds collected by it to offset the cost of commercial and industrial waste removal from businesses within the parish?
Based upon the factors outlined in this question, the answer must be in the affirmative.
We have examined the expenditure in question in light of Article VII, Section 14 of the Louisiana Constitution of 1974, which provides, in pertinent part, as follows:
 "§ 14. (A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private . . . .
 * * *
 (C) Cooperative Endeavors. For a public purpose, the state and its political subdivisions or political corporations may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation, or individual."
As quoted above, Paragraph (A) generally prohibits the loan, pledge or donation of public funds. Exceptions to this prohibition are found in Paragraph (B), none of which appear to be relevant to the issue at hand. Paragraph (C) of Section 14 authorizes the state and its political subdivisions (i.e., the Commission) to engage in cooperative endeavors for a public purpose with other governmental agencies, public or private associations and corporations and/or individuals. However, Paragraph (C) merely supplements the prohibition against donations contained in Paragraph (A). It does not create an exemption or exception from the general constitutional norm. City of Port Allen v. Louisiana RiskManagement, et al., 439 So.2d 399 (La. 1983); Op.Atty.Gen. No. 90-651.
In City of Port Allen, the Supreme Court ruled:
 "The cases that do exist [under La. Const. Art. IV
§ 12 (1921)] hold primarily that this section is violated whenever the state or a political subdivision seeks to give up something of value when it is under no legal obligation to do so . . . .
The threshold requirement of the constitutional doctrine for distinguishing between invalid and lawful expenditures and transfers of public funds and property is the presence of a legal obligation or duty by the transferor to alienate said funds or property. See also,Beard-Poulan, Inc. v. Dept. of Highways, 362 F. Supp. 547 (W.D.La. 1973) and Town of Brusly v. West Baton Rouge Parish Police Jury, 283 So.2d 288
(La.App. 1st Cir. 1973).
This prerequisite is satisfied by the presence of a valid statute, ordinance, charter or contract. The vehicle by which the obligation is created may, nevertheless, be ultra vires or unconstitutional if it creates no binding legal obligation or if the obligation created is substantially inconsistent with, or beyond the scope of the Commission's authorized duties. Op.Atty.Gen. No. 90-651.
In addition to the requirement of a legal duty, the expenditure must also be for a public purpose. Finally, the expenditure must create a public benefit proportionate to the cost (i.e., the amount expended). Op.Atty.Gen. Nos. 93-787, 92-722, 92-127 and 90-651.
The legal obligation/duty standard was applied by the Second Circuit Court of Appeal in James v. Rapides Police Jury, 113 So.2d 88 (La.App. 2nd Cir. 1959). James discusses two fundamental principles of importance related to this constitutional doctrine. The first is that the worthiness of the recipient and of the actual use of public funds is immaterial to the issue of the constitutionality of the transfer by the public entity. The second important statement of James is that custom, as expressed in the doctrine of contemporaneous construction, can not modify or negate the operation of the prohibition of Article VII, Section 14. Regardless of how long or how often any governmental entity has transferred funds to others, public or private, the duration and repetition of that practice does not create an exemption to the prohibition of Article VII, Section 14.
Under the Contract which clearly provides that additional services with commercial and industrial customers were to be negotiated, the sales tax proposition which is not limited to residential pickup and the Act which is not limited to residential pickup, the Commission has a valid legal duty or obligation to fund solid waste collection for both residential and commercial establishments. The collection of solid waste by the Commission is a public purpose that benefits the health, safety and welfare of the citizens of Evangeline Parish and the State. Whether the expenditure creates a public benefit proportionate to the cost (i.e., the amount expended, is a factual determination which must be made by the Commission after consideration of all factors involved.
As you noted, the situations in Op.Atty.Gen. Nos. 00-187 and 96-115 are distinguishable from this situation. Those two opinions found there would be a violation of Article VII, Section 14 of the Louisiana Constitution if the police juries were to fund the cost of a rental fee for commercial dumpsters placed on commercial businesses because in those instances there was no legal duty for the police juries to fund the costs of the rental fees.
Trusting this adequately responds to your request, we remain
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: ___________________________ MARTHA S. HESS Assistant Attorney General
RPI/MSH